

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-1994

# Glass v. Phila. Elec. Co.

Precedential or Non-Precedential:

Docket 92-1896

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Glass v. Phila. Elec. Co." (1994). *1994 Decisions.* Paper 128.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/128

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 92-1896


HAROLD GLASS,

                         Appellant

                    v.

PHILADELPHIA ELECTRIC COMPANY


Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Docket No. 90-06370


Argued: July 1, 1993

Before:  BECKER, ALITO and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed:  September 8, 1994)

Alice W. Ballard, Esquire (Argued)
Lynn Malmgren, Esquire
Samuel & Ballard
225 South 15th Street, Suite 1700
Philadelphia, PA 19102
        Attorneys for Appellant

Dona S. Kahn, Esquire (Argued)
Hope A. Comisky, Esquire
Richard G. Tuttle, Esquire
Anderson, Kill, Olick & Oshinsky
1600 Market Street, Suite 1416

Philadelphia, PA 19103
        Attorneys for Appellee


OPINION OF THE COURT

ROTH, Circuit Judge:

Harold Glass appeals from a jury verdict in favor of the Philadelphia Electric Company ("PECO") in his action claiming race discrimination, age discrimination, and retaliation in employment. Glass alleges that the district court abused its discretion when it repeatedly made evidentiary rulings against him, excluding his evidence concerning the allegedly racially hostile work environment at PECO's Eddystone Plant (the "Eddystone evidence") where he worked from 1984 to 1986. Glass claims that he was substantially prejudiced by the district court's rulings for two reasons. First, while the district court excluded Glass's Eddystone evidence, it admitted PECO's evidence of Glass's performance at Eddystone. Consequently, Glass was prohibited from telling his side of the story. Second, Glass claims that the excluded Eddystone evidence is relevant to the issue of pretext.

We conclude that the district court erred in excluding Glass's Eddystone evidence. We find that the error was not harmless; hence, we will reverse the district court's judgment and remand for a new trial.[1]

---

[1]. Glass also appeals on the grounds that the district court's instructions to the jury on pretext contained an incorrect legal standard. In light of our disposition, we will not reach this issue. We will leave to the district court the opportunity, in light of the evidence presented on remand, to draw up appropriate jury instructions, following the precedents set forth in St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993), and its

I.

Glass worked at PECO for 23 years before he retired in 1990.[2]  During his career, Glass worked in three different capacities: clerical (1967 to 1984), technical (1984 to 1986, and 1989 to 1990), and employee advocate (1986 to 1989).

While working full-time, Glass attended school to improve his career opportunities.  In May 1982, he received an Associate Degree in Electrical Electronics Engineering Technology.  In December 1987, he received an Associate Degree in Engineering.  In May 1988, he received a Bachelor of Science Degree in Industrial and Management Engineering.  In December 1988, he received a Bachelor of Science Degree in Engineering. PECO supported Glass's initiatives to obtain higher education by covering all of his tuition expenses through their tuition reimbursement program.

In addition to his full-time work and continuing education, Glass was an activist on behalf of PECO employees. His involvement with issues of employee and labor relations began in 1968, when, along with other minority employees, he helped organize the Black Grievance Committee ("BGC") to respond to problems of racial fairness at PECO, including inadequate

(..continued)
progeny.  See, e.g., Hook v. Ernst & Young, ___ F.3d ___ (3d Cir. 1994).

[2].  Glass chose to take early retirement as part of a plan offered by PECO during an overall cost cutting program caused by the need for economic retrenchment.

representation of minorities by PECO's uncertified labor organization, the Independent Group Association ("IGA").

For 20 years, from 1968 to 1988, Glass served as an officer of the BGC. He represented employees in handling routine individual grievances before management and negotiated with management about employee concerns.

In addition, he served as the lead in organizing witnesses in three actions against PECO concerning racially discriminatory employment practices. In the early 1970's he was a chief organizer in a pattern and practice race discrimination action filed in federal court against PECO. (Harold Glass, et. al. v. PECO). He was also an organizer and primary contact with counsel in another federal pattern and practice race discrimination suit, Black Grievance Committee, et. al. v. PECO, which resulted in a settlement that removed barriers to black employees' opportunities, increased employee productivity, improved the communications between PECO and its employees, and affected supervisory behavior as a result of an affirmative action training module. In 1982, Glass filed an unfair labor practice charge with the NLRB that resulted in a complaint and settlement requiring PECO to recognize the BGC in its employee handbook as an alternative source for employees seeking help in matters of discrimination or affirmative action. (NLRB v. PECO). The settlement also resulted in a creation of the BGC/IGA Liaison

Representative, the position which Glass held during the years 1986 through 1989.

Throughout his 23 years of employment with PECO, Glass received only one performance evaluation which was less than fully satisfactory. This occurred while he was serving as a junior technical assistant ("JTA") at Eddystone. During that time, Glass alleges that he was the target of racial harassment by his co-workers. He further suggests that the harassment had a negative effect upon his work performance.

In 1982, Glass unsuccessfully applied for the position of Affirmative Action Officer in Human Resources. In early 1989, having obtained two baccalaureate engineering degrees, he sought a promotion from the position of JTA to that of Engineer; however, he never heard from the three departments to which he applied. When he inquired later about the status of these applications, he was told that "some of the people were scared to take a chance on [him]." App. at 121. In particular, management pointed to his poor performance evaluation while at the Eddystone Station. App. at 114.

In late 1989, Glass applied for posted vacancies of Labor Relations Representative (three vacancies) and Affirmative Action Staff Assistant (one vacancy). Glass was rejected in both cases, in favor of younger white applicants because of management's claim that he was not a "team player," App. at 155, a reference to management's perceptions of Glass's tenure or

conduct as an employee advocate.  In addition, PECO filled other positions, without posting, that Glass would like to have been considered for, including that of Affirmative Action Officer, which was filled again in 1987, and that of Employee Relations Specialist, which was filled once in 1988 and once in 1989, by a white candidate in each case.

Glass left the position of Liaison Representative in early 1989 and returned to technical work as a JTA.  He retired at age 54 from this position.  When he was not selected to fill the aforementioned job openings at PECO in 1989 and 1990, Glass brought this action against PECO on October 3, 1990, claiming that he was discriminated against on the basis of his race and age and in retaliation for his activities as a minority advocate.

The District Court for the Eastern District of Pennsylvania had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334 over this claim which alleges violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.  The district court exercised supplemental jurisdiction over claims brought under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.  We have jurisdiction over Glass's appeal pursuant to 28 U.S.C. § 1291.

II.

We review pre-trial and trial court rulings concerning the admission or evidence for an abuse of discretion.  In re Japanese Electronic Products, 723 F. 2d 238, 260 (3d Cir. 1983), rev'd on other grounds, Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  Similarly, we review the district court's decision to include or exclude evidence arising under the Federal Rules of Evidence 401, 402 and 403 for an abuse of discretion.  Pfeiffer v. Marion Center Area School District, 917 F.2d 779, 781-82 (3d Cir. 1990).  We have explained that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."  Linkstrom v. Golden T. Farms, 883 F.2d 269, 269 (3d Cir. 1989); Fed. R. Evid. 103(a).  In reviewing evidentiary rulings, if we find nonconstitutional error in a civil suit, such error is harmless only "if it is highly probable that the error did not affect the outcome of the case."  Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 53, 59 (3d Cir. 1989).

A.

We note at the outset that the trial court admitted PECO's evidence of Glass's conduct at Eddystone and excluded Glass's Eddystone evidence without articulating a balance between the probative value and the prejudicial effect of the evidence as required by Fed. R. Evid. 403[3] and the jurisprudence of this

---

[3].  Fed. R. Evid. 403 states:
        Although relevant, evidence may be excluded if its
        probative value is substantially outweighed by the
        danger of unfair prejudice, confusion of the issues, or

Court.  See, e.g., United States v. Downing, 753 F.2d 1224, 1243 (3d Cir. 1985) (declining to decide the Rule 403 question where the district court neither mentioned Rule 403 on the record nor "conducted the balancing required by that rule"); United States v. Long, 574 F.2d 761, 770 (3d Cir.) (Adams, concurring) (the record should reflect, at least minimally, that balancing occurred), cert. denied, 439 U.S. 985 (1978).  Therefore, it is not clear for purposes of our review that the district court actually excluded any evidence under Rule 403 despite the district court's language suggesting that its rulings involve some Rule 403 concerns, i.e.:  "Let's not relitigate the Eddystone matter.  I'll sustain the objection."  App. at 358.

PECO contends that the trial court conducted a Rule 403 balancing when it granted PECO's pre-trial motion in limine.  As PECO had requested, the district court ordered that no evidence would be admitted at trial in two categories:  1) pre-May 1989 evidence about alleged discriminatory treatment of Glass by PECO that predates the statutory period covered by Glass's current claims, and 2) evidence of prior settlement agreements or consent decrees entered into by PECO.  While the district court's order does not give any reasons for granting PECO's motion, Glass's motion in opposition to PECO's motion in limine appears to invoke Rule 403 by opposing PECO's claims that the evidence "is

(..continued)
> misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

prejudicial, confusing and will promote delay in the proceedings." App. at 3.

If we consider PECO's motion in limine as the equivalent of a specific Rule 403 objection to the Eddystone evidence, then "we must confront the trial court's failure to articulate its balance between the probative value and the prejudicial effect of the evidence in one of two ways: either we decide the trial court implicitly performed the required balance; or, if we decide the trial court did not, we undertake to perform the balance ourselves." United States v. Eufrasio, 935 F.2d 553, 572 (3d Cir. 1991) (citation omitted). Independent of either method, "the trial court's failure to expressly articulate a Rule 403 balance when faced with a Rule 403 objection, would not be reversible error per se." Id.

If, on the other hand, we decide that PECO's motion in limine did not constitute a specific Rule 403 objection to the admission of the Eddystone evidence, then the trial court was not required to strike a Rule 403 balance on the record sua sponte.[4] We note that PECO's and Glass's understanding of what the trial court did is significant to our analysis. Both parties

_____

[4]. "Since the 'specific' objection requirement of Fed. R. Evid. 103(a) was not complied with, the trial judge was not required to deal with Rule 403. . . . [T]he dynamics of trial do not always permit a Rule 403 analysis in . . . detail . . . . [T]o require a detailed balancing statement in each and every case is unrealistic. . . . [W]here [a] Rule 403 [objection] is not invoked, the trial judge's balancing will be subsumed in his ruling." United States v. Long, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985 (1978) (emphasis added).

communicated at oral argument their belief that the trial judge based his evidentiary rulings on Rule 403.

We determine, however, that we do not in fact need to base our decision here on a resolution of whether or not PECO's pre-trial motion in limine constituted a Rule 403 objection.[5] Reviewing the trial transcript, including, on the one hand, the references by the defense to Glass's performance at Eddystone and the effect his poor performance rating there had on his later attempts at promotion and, on the other hand, the proffers made by Glass at those times as to what he would show concerning the impact of the racial harassment on his performance and his performance evaluation, we conclude that the district court's repeated refusal to grant Glass's attempts to admit the Eddystone evidence was an abuse of discretion.

B.

On the second day of trial at a sidebar conference, the court ruled that evidence of the allegedly hostile racial environment at Eddystone in the mid-1980's was inadmissible. Glass's counsel made the following offer of proof:

> BALLARD: If permitted, I would also offer evidence of the environment Mr. Glass encountered at Eddystone Station when he went there as a junior technical assistant in 1984 to show why he had difficulty

---

[5]. Indeed, it may be difficult for the district court at the pre-trial stage to make an adequate assessment of the Rule 403 balancing. See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 859-60 (3d Cir. 1990) ("[I]n order to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record.")

> performing there, to show that he was the victim of a discriminatory and harassing environment there. And I understand Your Judge's ruling of two -- Your Honor's ruling of two days ago to say that I should stay away from that as well.
>
> THE COURT: That's correct.

App. at 66. Glass contends that, if the Eddystone evidence had been admitted, it would have shown that the more senior technical employees posted hostile and demeaning images about him on the plant premises and that he was the subject of racially derogatory remarks. It would also have shown that the training and performance of junior technical assistants depended directly on the goodwill and support of the more experienced technical assistants and senior technical assistants who train and evaluate the junior technical assistants. Glass maintains that his behavior and his opportunity to learn and perform effectively was impaired by the hostile environment in which he worked.

The trial court repeatedly sustained PECO's objections to Glass's attempts to introduce evidence concerning these events. Glass testified that his activities on behalf of employees and as BGC/IGA Representative qualified him for the position of Labor Relations Representative. The requirements for the job of Labor Relations Representative were: a "bachelor's degree in human resource management or labor relations, or significant labor relations work experience or equivalent combination of work experience and successful completion of college courses covering such areas as labor relations, general

accounting, managerial accounting, and/or compensation and benefits."  Glass had both an appropriate college degree (B.S., Industrial and Management Engineering) and the relevant coursework.  He also had equivalent work experience developing and handling employee grievances, negotiating with management and settling major lawsuits related to employee relations and labor law.  His academic background and his work experience qualified him for the job and afforded him an interview with James Lange, Director of Labor Relations.

Even though Glass had met the education requirements and had the experiential background in labor relations, a qualification characterized as "preferred" on the job posting, he was rejected in favor of younger, white candidates, none of whom had comparable employee or labor relations experience.  Lange testified that one reason he rejected Glass was his poor performance at Eddystone.  Glass attempted to pursue the extent of Lange's knowledge of the Eddystone events on cross-examination:

> Q  No, my question is the previous
> performance that you identified as one of the
> reasons why you turned him down. ...
>
> A  Uh-huh.
>
> Q  ... that was his performance at Eddystone,
> isn't it?
>
> A  In part.
>
> Q  Now, did you do any investigation
> regarding his performance at Eddystone to see

whether he had been the victim of unfair
treatment there?

A   No, I did not.

Q  Did he tell you that he had been the
victim of unfair treatment there?

A  Yes, he had.

Q  Did he tell you that people had posted
hostile pictures of him on the wall  ...

          MS. KAHN:  Objection, ...
Q  ... when he was ...

          MS. KAHN: ... Your Honor.

Q  ... at Eddystone?

          THE COURT:  Let's not relitigate the
Eddystone matter.  I -- I'll sustain the
objection.

App. at 357-58.

     PECO also claimed that Glass was rejected because of

poor interpersonal skills, the focus of the testimony of Malcolm

Riley, Glass's boss at Eddystone.  Riley testified about Glass's

role as BGC representative while at Eddystone during the same

period.  Glass was not permitted to cross-examine Malcolm Riley

about the relationship between the hostile work environment and

Riley's judgment that Glass's behavior during this time evidenced

poor interpersonal skills:

          Q   Do you remember a time, Mr. Riley, when
          somebody at Eddystone Station put some
          pictures up on the board of Harold Glass?

               MS. KAHN:  Objection, Your Honor.
          Objection, Your Honor.  This is constantly

> brought into the case.  It was ruled that it
> was not relevant.
>
>          THE COURT:  I agree.  Now, let me
> see counsel one moment at sidebar.

App. at 404.

Glass was similarly denied the opportunity to introduce evidence of the circumstances at Eddystone in the context of his claim that PECO's refusal to hire him as an engineer in 1989-90 was discriminatory.  Alvin Weigand, head of the engineering division in which Glass worked, testified that he told Glass that a promotion to engineer would be conditioned on his satisfactorily performing in a JTA position for two years.  Glass denied having ever been told that the probationary period was for two years but instead understood that a waiting period of indefinite duration was being imposed on him.  In any event, a probationary period, whether two years or open-ended, was not applied to any other degreed candidate for an engineering job.  Glass declined the job.

At trial, Weigand testified that he imposed the probationary period because of Glass's poor performance while at Eddystone.  Glass attempted to pursue the extent of Weigand's knowledge of the Eddystone events on cross-examination:

> Q  Now, you said that you were aware of his
> past performance problems, in the technical
> field.  How did you know what kinds of
> problems you thought he had had?  Sorry.
> That's a terrible question.  What, quote,
> performance problems, close quote, were you
> aware of?

A    I was aware that he was not receiving satisfactory performance appraisals in his JTA job at Eddystone Station, and I was aware that he was not being promoted to TA which is the normal progression, and that was in my organization, down a couple levels.

Q    Were you aware that he had had difficulty on the job at Eddystone of a personal nature in connection with the other employees?

MS. KAHN:  Objection, Your honor. Again, we're going back into history which was ruled irrelevant.

THE COURT:  The objection's sustained.

App. at 426.  With PECO's objection sustained, Glass was repeatedly unable to introduce any evidence concerning the racially hostile environment at Eddystone station, management's failure to take corrective action when it learned of the harassment, or the connection between these incidents and his negative performance evaluation.

We find that the district court abused its discretion for the following reasons:  First, in the federal courts, the scope of permissible cross-examination is set forth in Fed. R. Evid. 611(b):  "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."  See also United States v. Sullivan, 803 F.2d 87, 90 (3d Cir. 1986).  The district court erred by allowing PECO's witnesses, Lange, Riley and Weigand, to testify about their knowledge of the events at Eddystone but then

not allowing Glass to cross-examine those witnesses as to the basis or extent of their knowledge.

Second, we find that the Eddystone evidence is independently relevant to a key aspect of the case: whether one of the principal non-discriminatory reasons asserted by PECO for its actions was in fact a pretext for age or race discrimination. In St. Mary's Honor Center v. Hicks, the Supreme Court confirmed that, under the well-established burden-shifting formula of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 253 (1981), in a Title VII case alleging employment discrimination:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not his true reasons, but were a pretext for discrimination.

Burdine, 450 U.S. at 252-53; see St. Mary's Honor Center, 113 S.Ct. at 2749 (reaffirming "our repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion'" of intentional discrimination). This formula applies equally to claims of age discrimination in employment under ADEA. See Chipollini v. Spencer Gifts, Inc., 814 F.2d 893,

897 (3d Cir. 1987) (in banc).  Since Glass had introduced sufficient evidence to establish a prima facie case and PECO had asserted several nondiscriminatory reasons for its actions, including Glass's poor performance at Eddystone, the Eddystone evidence is relevant and should have been admitted to help Glass meet his burden of proving intentional discrimination as Glass's counsel proposed in her proffer on three occasions during the trial.  The district court's rejection of Glass's proffers was error.  The preclusion of the evidence deprived Glass of a full hearing on the issue of pretext and was, therefore, not harmless error; rather, it is highly probable that the evidentiary rulings affected the outcome of the case.  Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 53 (3d Cir. 1989).[6]

Our decision is buttressed by the judicial inhospitability to evidentiary exclusions in discrimination cases.  The Eighth Circuit explained in reversing similar evidentiary exclusions in an employment discrimination suit:

> The effects of blanket evidentiary exclusions
> can be especially damaging in employment
> discrimination cases, in which plaintiffs
> must face the difficult task of persuading
> the fact-finder to disbelieve an employer's
> account of his own motives.

---

[6].  A Rule 403 balancing, if requested, would be a part of any ruling on a particular aspect of the Eddystone evidence, as such evidence might be relevant to the issue of pretext.  We conclude, however, that such a balancing of particular items of Eddystone evidence would be better made on remand by the trial judge, as testimony is proffered, than it would by us, out of context, at this stage of the proceedings.

. . .

>Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices -- evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1984).

Citing this passage from Estes, the Eighth Circuit in Hawkins v. Hennepin Technical Center, 900 F.2d 153, 155 (8th Cir. 1990), reversed summary judgment for the defendant in a disparate treatment sex discrimination case holding that the district court abused its discretion in barring the plaintiff from introducing evidence of prior sexual harassment of herself and other employees of the defendant. The magistrate judge had determined that any evidence, beyond the fact that the plaintiff had filed certain harassment complaints against the defendant in the past, was not relevant to the plaintiff's claim that she suffered disadvantageous employment decisions as a result of her gender and in retaliation for complaints of sexual harassment made by her while employed by the defendant.

The court of appeals disagreed, finding that evidence of the nature of the harassment complaints and the defendant's disposition of those complaints was highly relevant to the plaintiff's case because "an atmosphere of condoned sexual

harassment in a workplace increases the likelihood of retaliation for complaints in individual cases." 900 F.2d 156. See also Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1421 (7th Cir. 1986) (affirming district court's decision to admit plaintiff's evidence of harassment against other black workers in case alleging racially discriminatory discharge because "evidence was relevant both in showing that Allis Chalmers condoned racial harassment by its workers and in rebutting Allis Chalmers' defense that it had fired Hunter for cause.").

## III.

For the foregoing reasons, we conclude that the district court abused its discretion by repeatedly barring Glass at trial from introducing evidence about the hostile work environment at Eddystone and from eliciting testimony of how it related to Glass's performance, which, according to PECO, had operated to defeat his candidacy for the positions of Labor Relations Representative and Engineer. We will, therefore, reverse the district court's judgment and remand this case for a new trial.


Glass v. Philadelphia Electric
No. 92-1896



ALITO, Circuit Judge, dissenting:

Harold Glass, who was employed for many years by the Philadelphia Electric Company ("PECO"), sued his former employer for allegedly discriminating against him based on race and age and for allegedly retaliating against him because of his pursuit of other discrimination claims.[7] His case was tried before a jury, and the jury was requested to answer special interrogatories that asked whether PECO had discriminated against the plaintiff on the basis of race or age or had illegally retaliated against him when it failed to promote him to a variety of positions that were filled in the late 1980's. The jury found no such discrimination or retaliation, and the court entered judgment for PECO.

On appeal, the plaintiff contended, among other things, that the district court abused its discretion under Fed. R. Evid. 403 by excluding evidence that he had been subjected to a racially hostile environment when he worked at PECO's Eddystone Generating Station in the mid-1980's. The plaintiff argued that this evidence was relevant to show that PECO's asserted reasons for denying the promotions were pretextual and that this evidence

---

[7]. He asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 623; 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

should not have been excluded under Rule 403.  See Appellant's Br. at 17-26.  The majority agrees with the plaintiff's argument and therefore reverses the judgment of the district court and remands for a new trial.  In doing so, the majority makes little effort to explain why the excluded evidence had probative value or to address  the factors weighing against exclusion.  In my view, when both sides of the Rule 403 balance are carefully considered and the proper standard of appellate review is applied, the district court's rulings under Fed. R. Evid. 403 must be sustained.  Moreover, even if those rulings were incorrect, they were harmless with respect to several of the positions at issue.  For these reasons, I dissent.

I.

Before addressing the merits of the district court's evidentiary rulings, I will briefly supplement the procedural history set out in the majority opinion.  Prior to trial, PECO filed a motion in limine seeking to preclude the plaintiff from introducing evidence of discriminatory acts that allegedly occurred before "the statutory period covered by the charge [Glass] filed with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. . . ." Defendant's Motion In Limine at 1.  PECO argued that this evidence was not relevant under Fed. R. Evid. 401 and that it

should in any event be excluded under Fed. R. Evid. 403. PECO stated:

> [E]ven if this Court were to conclude that some or all of this evidence might be marginally relevant and otherwise admissible, if it is introduced, the Court will be forced to preside over -- and defendants will be forced to defend against -- numerous collateral matters to be tried within the main trial. These mini-trials would concern actions by decision-makers who were not involved at all in any of the action in the fall and winter of 1989 that Glass is challenging in this case. In many instances, they would concern events which occurred many years before the events actually in controversy here. Furthermore, by admitting this evidence, the jury will hear an overabundance of tangential, collateral and irrelevant issues which will undoubtedly confuse its consideration of the true issues in this case. There would be at least several extra days of trial time and ultimately, should this evidence be admitted, defendant will be unfairly prejudiced in its defense.

Memorandum of Law in Support of Defendant's Motion In Limine at 4-5. See also id. at 15-16.

The plaintiff then filed a lengthy memorandum in opposition to this motion. In this memorandum, the plaintiff stated that he "propose[d] to introduce evidence of his employment history, including his activities as an employee representative, to prove he was qualified for the positions he now claims he was denied because of his age and race." App. 3-4. After describing the plaintiff's work as a officer of the Black Grievance Committee, the memorandum stated:

[T]he story of Mr. Glass' activism directly
supports his contention that he was qualified
for the jobs he was denied, and that despite
these qualifications, he was rejected for
pretextual reasons. . . .

    In short, Mr. Glass' pre-1989 evidence
is relevant for the purpose of showing that
he was particularly qualified for the 1989-
1990 positions, and that this entire history
of activism in employee and labor relations
is consistent with a promotion into one of
them.

App. 9-10.  The memo also stated:
    [I]t is important to note what Plaintiff does
    not intend with regard to pre-1989 evidence.
    Plaintiff Glass does not intend to make
    actionable any of Defendant's promotional
    decisions which predate the limitations
    period in this action.  Nor does Plaintiff
    intend to prove the existence of a pattern or
    practice of discrimination. . . .

App. 8-9.  Not once in this memo did the plaintiff state that he

proposed to introduce evidence that he was subjected to racial

harassment or a racially hostile work environment during the

period when he worked at PECO's Eddystone station (from 1984 to

1986) or at any other time.[8]

    PECO next filed a reply memorandum.  PECO argued that

the plaintiff's pre-1989 experience representing other employees

was not relevant with respect to several of the positions to

_____

[8].  8.  Nor was harassment or a racially hostile environment at
Eddystone mentioned in the plaintiff's affidavit in opposition to
the motion in limine.

which he claimed he should have been promoted. However, with respect to some other positions -- the position of Affirmative Action Staff Assistant and three positions as a Labor Relations Representative -- PECO offered "to stipulate that plaintiff's activities on behalf of other employees provided him with the experience to meet certain criteria set forth in the job requisitions" for those positions. Rely Memorandum of Law in Support of Defendant's Motion In Limine at 7.

The plaintiff then filed a surreply objecting to the proposed stipulation because it would deprive him of "the opportunity to present the depth and texture of those qualifications to a jury." App. 16. This surreply, like the plaintiff's prior memorandum, made absolutely no mention of racial harassment or a racially hostile atmosphere at Eddystone or anywhere else.

After receiving these submissions, the district court, a few days before trial, entered an order granting PECO's motion. Because the district court did not explain the basis for its ruling, it is unclear whether the court held that the evidence of pre-1989 events was not relevant or whether the court concluded that the evidence should be excluded under Rule 403. In any event, however, I do not think that the plaintiff can attack this ruling on the ground that it improperly precluded him from proving that he had been subjected to racial harassment at Eddystone prior to 1989. Having explained to the district court

precisely what evidence of pre-1989 events he wanted to introduce and precisely why he wanted to introduce that evidence, and having said nothing about evidence of racial harassment or a racially hostile atmosphere at Eddystone or anywhere else, the plaintiff cannot, in my view, argue that the district court erred in failing to admit such evidence.  See Fed. R. Evid. 103(a)(2); Northeast Women's Center, Inc. v. McMonagle, 868 F.2d 1342, 1352-53 (3d Cir.), cert. denied, 493 U.S. 901 (1989).

When the trial began two days after the district court's order granting the motion in limine had been entered and sent to the parties, the plaintiff's counsel made an oral offer of proof, and the following colloquy occurred:

> MS. BALLARD [plaintiff's counsel]:  If permitted, I would also offer evidence of the environment Mr. Glass encountered at Eddystone Station when he went there as a junior technical assistant in 1984 to show why he had difficulty performing there, to show that he was the victim of a discriminatory and harassing environment there.  And I understand your Judge's ruling of two -- Your Honor's ruling of two days ago to say that I should stay away from that as well.

> THE COURT:  That's correct.

> MS. BALLARD:  All right.  And that would include the pictures that were placed on the wall that . . .

> THE COURT:  Right.

> MS. BALLARD:  . . . degraded Mr. Glass' personality.

> THE COURT:  Right.  All these rulings are made without prejudice to your renewing

> them if at a later time it turns out from the
> testimony that it might be appropriate to
> bring that in.  But on your case in chief,
> I've ruled that it's not admissible at this
> time.

App. 66-67.

While this oral offer of proof, unlike the plaintiff's
prior memoranda, referred to evidence of racial harassment at
Eddystone, plaintiff's counsel still did not explain how proof of
this harassment, apparently by co-workers,[9] was relevant to prove
that PECO officials had discriminated or retaliated against the
plaintiff when they denied him certain promotions years later.
In particular, plaintiff's counsel did not claim that this
evidence was relevant to show that PECO's reasons for denying the
plaintiff these promotions were pretextual.  Thus, if I had been
the trial judge, I am not sure that I would have grasped, based
on the plaintiff's prior memoranda and this short exchange, that
the plaintiff was proposing to prove the harassment at Eddystone
for the purpose of showing pretext.  But even if it is assumed
that the plaintiff's oral offer of proof was sufficient to convey
this point, the fact remains that the trial judge did not
categorically bar proof of the events at Eddystone.  On the
contrary, the judge expressly stated that his rulings on the
motion in limine were "made without prejudice to the [the
plaintiff's] renewing them if at a later time it turn[ed] out

---

[9].  See App. 405-06.

from the testimony that it might be appropriate to bring that in."  App. 67.  Accordingly, I do not think that the cases cited by the majority concerning "blanket evidentiary exclusions" (see Maj. Typescript at 16 (quoting Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1984)) are at all pertinent.[10]  Instead, I think that it was incumbent on the plaintiff to renew his request to admit evidence concerning events at Eddystone as the trial developed.  The plaintiff did so; the district court then ruled; and it is these specific rulings, in my view, that we must review.

The exchanges that led to these specific rulings are quoted in the opinion of the court (see Maj. Typescript at 11-14), and therefore I will not repeat them here.  I will, however, note two salient features of these exchanges.  First, at no point did the plaintiff's attorney refer to the concept of "pretext" or provide a clear explanation of the relevance of the Eddystone evidence.  Second, at no point did the trial judge refer to Rule 403 or provide a clear explanation of the basis of his rulings

---

[10].  The two cases discussed by the majority -- Estes  and Hawkins v. Hennepin Technical Center, 900 F.2d 153, 155 (8th Cir.) cert. denied, 498 U.S. 854 (1990), -- are readily distinguishable from the current case on at least two important grounds.  First, those cases concern pretrial orders categorically prohibiting the admission of certain evidence, whereas in this case the trial judge expressly stated that his pretrial order was made without prejudice to the plaintiff's attempt to admit the evidence at a later point.  Second, in Estes and Hawkins, unlike this case, introduction of the evidence in question was sought for the purpose of proving a pattern of discrimination.

excluding the evidence in question.  Faced with this ambiguous record, I think it is appropriate to give both sides the benefit of the doubt.  Consequently, I construe the remarks of plaintiff's counsel as having preserved the argument that the Eddystone evidence was relevant to show pretext, and (like counsel for both parties[11]) I construe the district court's ruling as having been based on an implicit balancing pursuant to Rule 403.  See United States v. Eufrasio, 935 F.2d 553, 572 (3d Cir.), cert. denied, 112 S. Ct. 340 (1991).  In this regard, I note that the district court did say that it did not want to "relitigate the Eddystone matter" (App. 358), and I interpret this reference as essentially accepting PECO's argument in favor of exclusion under Rule 403.  If this interpretation of the district court's reasoning is too generous, it is no more generous than my reading of the plaintiff's explanation of the relevance of the Eddystone evidence.  Thus, based on these interpretations of the record, it seems to me that the issue before us is the following:  did the district court commit reversible error in concluding that the Eddystone evidence's probative value for the purpose of proving pretext was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay and waste of time?  See Fed. R. Evid. 403.  I therefore turn to this question.

---

[11].  See Appellant's Br. at 15; oral argument Tr. at 17.

## II.

According to our precedents, "[a] trial judge is given `very substantial discretion' when striking a Rule 403 balance." Eufrasio, 935 F.2d at 572. A trial judge's ruling under Rule 403 may be reversed only if the judge committed an abuse of discretion. Id. Indeed, we have held that "a trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is `arbitrary and irrational.'" Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990), cert. denied, 501 U.S. 1217 (1991), (quoting United States v. DePeri, 778 F.2d 963, 973-74 (3d Cir. 1985), cert. denied, 475 U.S. 1110 and 476 U.S. 1159 (1986)); see also United States v. Friedland, 660 F.2d 919, 929 (3d Cir. 1981), cert. denied, 456 U.S. 989 (1982); United States v. Long, 574 F.2d 761, 767 (3d Cir.), cert. denied, 439 U.S. 985 (1978). We have also observed:

> If judicial self-restraint is ever desirable,
> it is when a Rule 403 analysis of a trial
> court is reviewed by an appellate tribunal.

United States v. Long, 574 F.2d at 767; see also Eufrasio, 935 F.2d at 572. As the Seventh Circuit aptly wrote in a case quite similar to this one:

> The balancing of probative value and prejudicial
> effect, like other comparisons of intangibles, requires
> an exercise of judgment rather than a computation.
> Only in an extreme case are appellate judges competent
> to second-guess the judgment of the person on the spot,
> the trial judge.

Sims v. Mulcahy, 902 F.2d 524, 531 (7th Cir.), cert. denied,

498 U.S. 897 (1990) (citation omitted).

Applying an abuse-of-discretion standard, I think that the trial judge's ruling in this case must be sustained.  I recognize that evidence that the plaintiff was subjected to racial harassment or a racially hostile atmosphere at Eddystone has some probative value for the purpose of showing that PECO's reliance on plaintiff's poor evaluation while at Eddystone was pretextual.  If the plaintiff was harassed at Eddystone, that harassment might have caused or contributed to his poor performance rating.  Thus, evidence of harassment at Eddystone is relevant to show that the plaintiff's performance rating for that period was inaccurate.  The plaintiff's poor rating at Eddystone was cited as a reason for PECO's denial of the plaintiff's requests for promotion to positions as a Labor Relations Specialist and to an engineering position.  If the officials who made the decisions concerning these promotions knew or believed that the Eddystone evaluation had been affected by the harassment and was therefore inaccurate, that would tend to show that their reliance on this rating was pretextual.  Consequently, proof of the plaintiff's harassment at Eddystone could form part of a chain of reasoning leading to the inference that the PECO decisionmakers discriminated or retaliated against the plaintiff.

But while the evidence of harassment at Eddystone that the plaintiff was precluded from introducing thus has some probative value, its probative value is limited.  First, with

respect to the positions as a Labor Relations Representative, PECO did not rely heavily on the plaintiff's performance at Eddystone as an explanation for its decisions. The official responsible for filling these positions, James Lange, listed numerous other reasons why he did not choose the plaintiff. Among other things, Lange mentioned: his belief that the plaintiff was unable "to function as a change agent" and was "wedded to the past way of doing things" (9/25/92 Tr. at 154-56); his concern about the plaintiff's "ability to be objective in the area of labor relations" (id. at 163); his view that the plaintiff was not a "team player" (id. at 163-64); PECO's policy of giving preference to candidates from within the same department (9/29/92 Tr. at 109); the plaintiff's failure to meet educational requirements (id. at 113); and concerns about the plaintiff related to "issues like credibility, confidentiality, [and] trustworthiness." Id. at 168. Moreover, while Lange stated that he had initially been concerned about the plaintiff's performance at Eddystone, he added that, when he heard the plaintiff's explanation of the reason for his poor rating during that period, this explanation "helped alleviate some of the concerns." 9/25/92 Tr. at 158. Second, the plaintiff was able to bring out some evidence of harassment at Eddystone. His attorney elicited testimony that the plaintiff had told Lange that he had been a "victim of harassment" and had "experience[d] problems." Id. at 158-59. Third, it seems to me that the

probative value of evidence of harassment at Eddystone was substantially undermined by the plaintiff's unwillingness to argue that the PECO decisionmakers who were responsible for denying him the promotions at issue believed that the Eddystone evaluation was inaccurate. As I previously explained, it appears to me that evidence of harassment at Eddystone is relevant primarily, if not exclusively, as part of a chain of reasoning that includes, as one link in the chain, the conclusion that PECO officials cited the Eddystone evaluation as a reason for their decisions even though they did not actually believe that this evaluation was an accurate reflection of the plaintiff's abilities. Plaintiff's counsel has argued strenuously, however, that she did not want to prove that the PECO decisionmakers lied when they gave their reasons for not promoting the plaintiff.[12] Instead, the plaintiff's theory was that these officials were guilty of "unconscious forms of pretext."[13] Putting aside the question of whether, as a matter of law, a plaintiff in a disparate treatment case may prevail based on evidence of "unconscious" discrimination,[14] it seems to me that the

_____

[12] "[M]endacity," she stated, "was not in my proof." I think that the defense witnesses in this case were telling the truth when they [gave the reasons for their decisions]. Oral Argument Tr. at 12.

[13] Id. at 53.

[14] Compare International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977), with David Benjamin Oppenheimer, Negligent Discrimination, 141 U. Pa. L. Rev. 899 (1993).

plaintiff's reliance on this unconventional theory substantially diminished the probative value of the evidence of harassment at Eddystone.

On the other side of the Rule 403 balance, I think that there is substance to PECO's contention that permitting proof of the alleged discrimination at Eddystone might have led to a mini-trial and caused substantial unfair prejudice. As PECO put it in its brief:

> Had Glass been permitted to prove the events which he contends influenced his performance evaluations at Eddystone, PECO would have been entitled to offer proof (1) that the events did not occur as Glass contended; and (2) that his performance evaluation would have been negative whether or not such events occurred. The results would have been trials on two collateral issues -- a trial on the occurrence vel non of incidents of harassment, and a trial concerning the effect, if any, of such events on Glass's performance during 1984 and 1985. Together, these two trials-within-a-trial would have been equal in scope and complexity to the trial that was actually held.

Appellee's Br. at 14 (footnotes omitted). Even if PECO's estimate of the length and complexity of this "minitrial" is exaggerated, I still think that these considerations were legitimate and weighed appreciably in favor of exclusion. Furthermore, introduction of evidence of harassment at Eddystone might well have led the jury to believe that these events were part of a pattern of discrimination by PECO and, since even the plaintiff did not advance such a claim (see supra, at 4), the

introduction of this evidence had a potential for causing PECO unfair prejudice.

In short, there are clearly factors on both sides of the Rule 403 balance, and reasonable minds can differ as to whether that balance tilts in favor of admission or exclusion of the Eddystone evidence.  My colleagues obviously believe that the balance tilts in favor of admission.  Our function, however, is not to balance the Rule 403 factors ourselves.  Rather, we are supposed to afford substantial deference to the balance struck by the trial judge and, if that is done, his rulings in this case must be sustained.  His rulings did not constitute abuses of his discretion.  They most certainly were not arbitrary or irrational.  Bhaya, 922 F.2d at 187.  And this case is surely not one of those "extreme case[s]" in which appellate judges may properly "second-guess the judgment" of the trial judge.  Sims, 902 F.2d at 531.[15]

Moreover, even if the trial judge's rulings constituted abuses of his discretion, those rulings were harmless with respect to the positions as Labor Relations Representative.  As

---

[15].  In addition to concluding that the district court abused its discretion under Fed. R. Evid. 403, the majority states that the district court's rulings were erroneous for an additional reason, viz., because they improperly limited the scope of cross-examination under Fed. R. Evid. 611(b).  Maj. typescript at 14. This analysis is flawed, in my view, because the district court did not rely on Rule 611(b) in excluding the evidence at issue and because Rule 611(b) does not prevent a trial judge from excluding evidence under Rule 403 during cross-examination.  See United States v. Beechum, 582 F.2d 898, 907 (5th Cir. 1978).

noted (see pages 11-12 supra), Lange, in discussing those positions, provided a long list of other reasons for not selecting Glass, and Lange stated in effect that he did not rely heavily on Glass's performance at Eddystone. Thus, even if Glass had succeeded in showing that Lange's relatively minor reliance on the Eddystone evaluation was pretextual, it is "highly probable" that the jury's verdict concerning the positions as Labor Relations Representative would not have been affected. See Lippay v. Christos, 996 F.2d 1490, 1500 (3d Cir. 1993); McQueeny v. Wilmington Trust Co., 774 F.2d 916, 924 (3d Cir. 1985). Accordingly, any erroneous evidentiary rulings made by the district court were harmless with respect to those positions.

For these reasons, I dissent.