**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1587

_____

UNITED STATES OF AMERICA

v.

GORDON D. MCDONALD,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2:09-cr-00656-001)
District Judge: Honorable Susan D. Wigenton

_____

Submitted under Third Circuit LAR 34.1(a)
on October 29, 2015

Before: MCKEE, Chief Judge, SCIRICA and ROTH, Circuit Judges

(Opinion filed:  June 20, 2016)

_____

OPINION[*]

_____

ROTH, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Gordon McDonald appeals his conviction and sentence for fraud and kickback conspiracies,[1] major fraud against the United States,[2] conspiracy to launder money,[3] bid rigging,[4] providing a kickback to a prime contractor,[5] subscribing a false tax return,[6] and obstruction of justice.[7] McDonald argues the District Court erred in (1) rejecting a proposed jury instruction; (2) excluding evidence regarding a separate fraud scheme; (3) overruling his objection to a comment by the government during closing; (4) excluding evidence regarding McDonald's physical health; and (5) calculating the improper benefit for purposes of determining the Guidelines range. For the reasons that follow, we will affirm the District Court's judgment.

## I.

Because we write for parties familiar with the facts, we set forth only a limited background. McDonald was the project manager at two toxic waste cleanup sites, Diamond Alkali and Federal Creosote, for which his employer, Sevenson Environmental Services, served as general contractor. Tierra Solutions, the responsible party for the pollution at Diamond Alkali, paid the cleanup costs at that site. At Federal Creosote, because the responsible party was unable to pay, the U.S. Environmental Protection Agency paid for the cleanup through the Superfund Program.

---

[1] 18 U.S.C. § 371.
[2] 18 U.S.C. § 1031(a).
[3] 18 U.S.C. § 1956(a)(2)(A).
[4] 15 U.S.C. § 1.
[5] 41 U.S.C. § 8702.
[6] 26 U.S.C. § 7206(1).
[7] 18 U.S.C. § 1512(c)(2).

McDonald and his co-conspirators manipulated the subcontractor bidding process at the two sites so that favored bidders could win subcontracts at inflated prices, by sharing "last looks" of rivals' bids, providing inside information, and coordinating bids. McDonald arranged for the three subcontractors to give him and other Sevenson employees gifts—such as cash, tickets to events, electronics, dinners, and cruises—and to pass the cost of the gifts on as legitimate costs to Tierra Solutions or the EPA. McDonald also submitted tax returns in which he deducted various kickbacks as "outside services" on the tax form for a shell company he owned and gave several false statements to IRS special agents.

As relevant to this appeal, the government introduced evidence regarding two schemes for which McDonald was not specifically charged. In a scheme referred to as "disposal switch," subcontractor Bennett Environmental removed over 20,000 tons of soil for disposal and billed the federal government $498.50 per ton. However, Bennett Environmental used a cheaper disposal method, for which the price was only $418.50 per ton. No one notified the government of this "switch," and Bennett Environmental received a $2 million windfall. Informed of the scheme, McDonald received 25 percent of the windfall by sending invoices through his shell company to Bennett Environmental for services that the shell company did not perform. In another scheme known as "fictitious invoices," subcontractor JMJ Environmental, which provided waste water treatment at both sites, submitted invoices to Sevenson for work JMJ Environmental did not perform. Upon receiving payment from Sevenson, JMJ Environmental sent the funds, at McDonald's direction, to a flower shop owned by McDonald's wife. McDonald

3

did not object to the admission of the evidence regarding these schemes, and instead requested a jury instruction regarding the evidence. The District Court denied the request.

A jury convicted McDonald and the District Court sentenced him to a total term of imprisonment of 168 months. McDonald appeals.

## II.[8]

### A.    Proposed Jury Instruction

McDonald argues the District Court erred in denying his proposed jury instruction, which stated that, with regard to testimony on the "disposal switch" and "fictitious invoices" schemes, "[t]he defendant is only on trial for the crimes charged in the indictment" and "you may not conclude that the government should have charged defendant with [the] uncharged crimes." The District Court rejected McDonald's proposal and instead instructed: "[y]ou should consider only those goals or objects that I will explain to you. Gordon McDonald is not on trial for any conduct, offenses[,] or objectives not alleged in the indictment." We review the District Court's refusal to give a requested jury instruction for abuse of discretion.[9] "A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant."[10] Here,

---

[8] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
[9] *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011).
[10] *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999).

McDonald's proposed instruction would have been substantially duplicative of the District Court's instruction. Therefore, the District Court did not abuse its discretion.

**B. Indictment in the District Court for the Western District of New York**

McDonald argues the District Court erred in refusing to admit evidence of an indictment before the United States District Court for the Western District of New York, unrelated to this case except that it concerned Sevenson executives. Those executives were neither defendants nor witnesses in this case. Nevertheless, McDonald maintains the WDNY indictment, which alleged the use of fraudulent invoices in a tax evasion scheme, would show his own acts were in furtherance of tax fraud rather than the kickback and fraud conspiracies charged in this case. We review a district court's evidentiary rulings for abuse of discretion.[11] McDonald does not challenge the District Court's analysis, under Federal Rule of Evidence 403, that the WDNY indictment had little probative value and would confuse the jury. Rather, McDonald asserts three grounds upon which the evidence should have been admitted: (1) as an admission by a party opponent; (2) under the doctrine of judicial estoppel; and (3) as required for due process under *Brady v. Maryland*.[12] None is availing.

First, because the District Court did not exclude the WDNY indictment on hearsay grounds, the hearsay exception for admission by a party opponent is irrelevant. Second, because the WDNY indictment involved no factual overlap with McDonald's case, McDonald cannot point to an inconsistent legal or factual position as to trigger judicial

---

[11] *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000).
[12] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

estoppel.[13]  Third, we review the *Brady* claim for plain error because it was not raised in the District Court.[14]  We conclude there was no error, because McDonald has not established any evidence from the WDNY indictment as favorable to him or bearing on the credibility of any witness in his case.[15]  Therefore, the District Court did not err in excluding the WDNY indictment.

### C.    Closing Argument

McDonald objects to the government's characterization, in summation, that McDonald's "co-conspirators have come clean," and argues the comment implied his culpability and highlighted his decision not to testify, thereby prejudicing the outcome of the trial.  Because McDonald did not object until after his own closing argument, we review for plain error.[16]  "Improper statements made during summation may warrant a new trial when such statements cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."[17]  Here, the comment does not misstate the evidence or lead the jury to infer any undisclosed facts that the prosecutor knew but that could not be admitted in evidence.[18]  According to the government, the comment was made to address why the co-

---

[13] *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998).

[14] *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012).

[15] *United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002); *Strickler v. Greene*, 527 U.S. 263, 282 (1999).

[16] *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

[17] *United States v. Brown*, 765 F.3d 278, 296 (3d Cir. 2014) (internal quotation and punctuation omitted).

[18] *See United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999); *United States v. Walker*, 155 F.3d 180, 186 (3d Cir. 1998).

conspirators' testimony was credible, in response to McDonald's efforts to discredit the testimony of the co-conspirators, who initially denied responsibility of wrongdoing and later pled guilty. The comment is not improper.

Moreover, even if the comment was improper, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."[19] Here, the District Court instructed the jury that testimony regarding the cooperators' guilty pleas was "offered only to allow you to assess the credibility of the witness" and "[y]ou must not consider . . . their guilty pleas . . . as any evidence of Gordon McDonald's guilt."[20] The District Court also instructed, "[w]hether or not their testimony may have been influenced by the plea agreement or the [g]overnment's promises is for you to determine."[21] Further, the District Court instructed, "[y]ou must not attach any significance to the fact that Gordon McDonald did not testify."[22] In light of these instructions, we conclude the government's conduct—even if it had been improper—did not amount to plain error.

### D.     Evidence Regarding McDonald's Physical Condition

McDonald maintains he suffered from loss of memory and eyesight, and argues the District Court erred in (1) refusing to declare McDonald incompetent to stand trial,

---

[19] *United States v. Young*, 470 U.S. 1, 11 (1985).
[20] S.A. 1407.
[21] *Id.*
[22] *Id.* at 1410.

7

(2) excusing a juror for comments related to McDonald's physical health, (3) provisionally excluding evidence of his physical infirmities, and (4) instructing the jury not to consider his physical condition. None of the challenges has merit.

First, we review the District Court's finding of competency under the clearly erroneous standard and conclude that there was no clear error.[23] The District Court noted that the court-appointed expert performed multiple tests that indicated that McDonald was malingering. The District Court also noted that the defense's expert merely concluded that McDonald suffered from certain cognitive limitations, but that conclusion failed to address whether McDonald was able to understand the nature and consequences of the proceedings and assist properly in his defense.

Next, we review the District Court's decision to excuse a sitting juror for abuse of discretion.[24] Where a district court takes steps to ascertain that the juror can serve fairly and impartially, there is no abuse of discretion.[25] The District Court interviewed the juror, who stated, "I don't know if I can find this guy guilty[,]" and answered affirmatively to the question, "[t]he bottom line is you don't believe you can be fair and impartial . . . ?"[26] Based on these responses, the District Court properly excused the juror.

---

[23] 18 U.S.C. § 4241(d); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989).
[24] *See U.S. v. Cameron*, 464 F.2d 333, 334-35 (3d Cir. 1972) (per curiam).
[25] *See U.S. v. Vega*, 285 F.3d 256, 265-67 (3d Cir. 2002).
[26] S.A. 226, 228.

Third, we review the District Court's provisional ruling to exclude evidence of McDonald's physical condition for abuse of discretion.[27] The District Court provisionally excluded the evidence because nothing in the case related to McDonald's physical infirmities, and noted that it would further consider the issue if McDonald decided to testify. McDonald decided not to testify. Therefore, there was no abuse of discretion.

Finally, regarding the District Court's instruction not to allow sympathy to influence the jury's decision, the verdict "should not be based solely on the juror's [sic] emotional sensitivities, but on their evaluation of the actual evidence concerning the crime and the defendant."[28] Therefore, the District Court properly instructed the jury.

### E.      Calculation of the Sentencing Guidelines Range

McDonald argues the District Court erred in calculating the Guidelines range, which was enhanced because of added offense levels based on the amount of improper benefit.[29] We review the District Court's findings of fact for clear error.[30] The government submitted information on improper benefit, which was calculated by taking the price of soil disposal per ton, subtracting the direct cost of soil disposal per ton, and multiplying by the number of tons of soil disposed. Using this formula, the improper benefit is almost $14 million. McDonald does not dispute the methodology, but argues the direct cost of $200 per ton is too low because an EPA report indicates $200 per ton is

---

[27] *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).
[28] *Lesko v. Lehman*, 925 F.2d 1527, 1549 (3d Cir. 1991).
[29] U.S.S.G. § 2B4.1.
[30] *United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013).

only a portion of the direct cost. However, the direct cost estimate that the government actually used was $257.73 or $284.28, depending on the site, and not $200. Also, the EPA figure cited by McDonald is inapposite because it is the average cost to dispose a ton of ash, not soil. Therefore, McDonald's challenge likewise fails.

**III.**

For the forgoing reasons, we will affirm the judgment of the District Court.