Eileen A. FUENTES, Administratrix Ad Prosequendum of decedent Carlos A. Fuentes, and also as General Administratrix of the Estate of Carlos A. Fuentes, Appellant,

v.

Francis H. REILLY, Airfreight Trucking Services, Inc., Airport Truck Rental, Inc. and Drayage Services, Inc., Appellees.

No. 78–1425.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1978.

Decided Jan. 9, 1979.

Douglas R. Kleinfeld, Conway, Reiseman, Bumgardner, Hurley & Kleinfeld, Newark, N. J., for appellees.

Burtis W. Horner, Stryker, Tams & Dill, Newark, N. J., for appellant.

Before GIBBONS and WEIS, Circuit Judges and DUMBAULD, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

Exclusion of expert testimony on the effect of delayed medical attention to a motor vehicle accident victim constitutes reversible error in this diversity case. Because the evidentiary ruling prevented the plaintiff

from presenting substantial claims to the jury, a new trial will be necessary.

Suit was filed in the district court to recover damages for the death of plaintiff's decedent caused by injuries received in a motorcycle-truck collision in Newark, New Jersey. Trial was to a jury that, applying New Jersey's comparative negligence law, assessed decedent's fault at 55%, and the defendant truck driver's fault at 45%. Accordingly, the district court entered judgment for the defendants.[1] N.J.Stat.Ann. § 2A:15-5.1 (West Supp. 1978).

The collision occurred at an intersection on the evening of May 28, 1976. The time was a critical element of the case and was the subject of conflicting testimony. According to the defendant Reilly, the accident occurred at approximately 9:45 P.M. However, the sole eyewitness, Abraham Evans, testified that the mishap took place about 30 minutes later.

Reilly testified that he was driving a tractor unit without a trailer attached and slowed to about 10 miles per hour as he approached the intersection. Although there was a stop sign against him, he did not pause but continued straight ahead. Reilly stated that he was unaware of an impact while passing through the intersection but that after proceeding 25 to 30 feet beyond it, be glanced in the rear view mirror and saw sparks coming from beneath the truck. At that point, he stopped, got out of the cab, and dislodged what appeared to be part of a motorcycle. He then remounted the truck, turned it around, and proceeded back to the intersection where the decedent, then seriously injured, was lying on the street. Defendant testified he did not see the decedent and proceeded on his way.

Evans, the eyewitness, testified that he observed the tractor and the decedent's motorcycle both entering the intersection, but

---

* Honorable Edward Dumbauld, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. In addition to Reilly, the truck driver, the complaint named as defendants Airfreight Trucking Services, Inc., Drayage Services, Inc., and Airport Truck Rental, Inc. At the end of plaintiff's case, the trial court directed a verdict for Airport Truck Rental, Inc., and no appeal has been taken from that ruling.

did not see the impact. He watched the truck turn around, return to the intersection, and stop near the decedent's body. According to the witness, Reilly took a few steps toward the decedent, then walked back to the truck and drove away. The license plate from the front of the tractor was found at the scene and Reilly turned himself in to the Newark police on the following day.

The main dispute in this appeal centers on the testimony of various experts. An expert witness for the defense testified that an autopsy finding of a .067% alcohol concentration in the brain tissue (equivalent to a .08% blood alcohol concentration) indicated that the decedent's faculties were impaired at the time of the accident. The witness said that a .067% concentration in the brain at time of death could be retrocalculated to a .127% level at time of accident, some four hours earlier. Plaintiff objected to the retrocalculation on the ground that an inadequate foundation had been laid.

The plaintiff called a surgeon as an expert witness to opine that the defendant's failure to call for assistance reduced the decedent's chances of survival. The trial judge excluded this evidence because he found inadequate foundation for such an opinion. The plaintiff appeals from the denial of her motion for a new trial based on the admission of testimony from defendant's expert and the exclusion of the surgeon's opinion which she offered.

■■■ We have painstakingly reviewed the record and conclude there was no reversible error in the district court's ruling that defendant's expert could testify about decedent's probable impairment from alcohol at the time of the accident. After weighing the competing considerations with due respect for the rights of both parties, the trial judge concluded that the evidence was competent and relevant. We are required to review assertions of error in this connection under the standard set out by the Supreme Court in *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962): "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." We note that the expert was cross-examined at length and that the plaintiff produced rebuttal evidence from her own highly qualified expert. Under the circumstances, we cannot say that the ruling on this issue requires a new trial.

■■ We come to a contrary result, however, with respect to the exclusion of plaintiff's expert testimony on the harmful effect of delay in securing medical treatment for the decedent. Plaintiff produced Dr. David Befeler, a well-qualified surgeon, who testified at some length on voir dire out of the jury's presence. In essence, his opinion was that an approximately 45-minute delay between the time of the accident and the arrival of medical assistance on the scene would reduce the decedent's chances of survival. He testified that the victim's injuries required prompt emergency and surgical care and that ambulance attendants did give proper treatment to the decedent once they reached him. After cross-examination concluded, the trial judge ruled that the doctor's opinion could be submitted to the jury.

The preliminary testimony of the doctor was then repeated in the jury's presence, but when the defendant objected to a hypothetical question on the effect of delayed medical attention, the court called for a side-bar conference. After some discussion, the objection was sustained and the expert was not permitted to answer.

The hypothetical given to the physician used as essential facts: the accident occurred "sometime after 9:45 P.M."; the police arrived at the scene at 10:28; the ambulance was called at 10:28; and it arrived at the intersection at 10:31. Given those assumptions, the physician was asked for an opinion on the decedent's chances of surviv-

al if the defendant had summoned aid immediately after the accident.

The defendant objected on the ground there was evidence in the record that someone had called the police immediately after the accident. Responding favorably to this assertion, the trial judge excluded the evidence because "first, if someone else called, that cuts Reilly off; and, secondly, there's no testimony they would have arrived on the scene at a certain time."[2]

At a later point in the trial, after producing evidence that the police first received a call about the accident at 10:27, plaintiff's counsel proposed recalling Dr. Befeler. Noting that this new evidence "would not cure the deficiencies which otherwise exist," the court adhered to its previous ruling.

■ The trial court seemingly assumed that if the delay for which Reilly was responsible contributed to the plaintiff's injuries, then such evidence would be relevant. This ground of relevancy, however, hinges upon whether New Jersey law would permit a party to recover damages for injuries aggravated by the delay.

A New Jersey statute imposes criminal penalties for the "driver of any vehicle involved in an accident" who fails to "render to a person injured in an accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person." N.J.Stat. Ann. 39:4–129 (West 1973). State cases applying the statute have been limited to criminal prosecutions and have not decided whether a violation imposes civil liability as well. *See, e.g., State v. Gill*, 47 N.J. 441, 221 A.2d 521 (1966); *Lo Biondo v. Allan*, 132 N.J.L. 437, 40 A.2d 810 (1945). Defendants contend that the New Jersey courts have viewed infractions of this statute as

permitting no more than an inference of defendant's negligence as to the initial collision, *e.g., Jones v. Strelecki*, 49 N.J. 513, 519, 231 A.2d 558, 561 (1967). But those cases do not include claims for damages specifically predicated upon a party's failure to stop and render assistance. The question of civil liability for violations of the statutory duty of care therefore remains an open one.

We recognize, however, that New Jersey has been in the vanguard in expansion of tort remedies and thus we can safely predict that if confronted with the issue here, its courts would hold that the statute expresses a standard of conduct that must be observed by a person involved in a motor vehicle accident. As Dean Prosser notes:

> "The standard of conduct required of a reasonable man may be prescribed by legislative enactment. When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate.
>
> . . . .
>
> The fact that such legislation is usually penal in character, and carries with it a criminal penalty, will not prevent its use in imposing civil liability, except in the comparatively rare case where the penalty is made payable to the person injured, and clearly is intended to be in lieu of all other compensation."

W. Prosser, Law of Torts § 36 (4th ed. 1971) (footnotes omitted).

He goes on to describe the rationale for this position:

> "Perhaps the most satisfactory explanation is that the courts are seeking, by something in the nature of judicial legislation, to further the ultimate policy for the protection of individuals which they

---

**2.** The trial judge also commented that "after 9:45 P.M." could be midnight. Because of the ruling sustaining the objection to the hypothetical, the plaintiff did not have an opportunity to remedy this defect, as might be expected. At the voir dire, the assumed time of the accident was "about 9:45 P.M." We have no doubt that the trial judge would have permitted plaintiff's counsel to clarify this aspect of the hypothetical.

find underlying the statute, and which they believe the legislature must have had in mind. The statutory standard of conduct is simply adopted voluntarily, out of deference and respect for the legislature." *Id.* (footnotes omitted).

One New Jersey case does suggest in an aside that the statute establishes a duty of care to be complied with in noncriminal settings. *Butler v. Jersey Coast News Co.,* 109 N.J.L. 255, 258, 160 A. 659, 661 (1932). The draftsmen of the Restatement concur in establishing a similar standard of care:

"If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."

Restatement (Second) of Torts § 322 (1965).

*See also Brooks v. E. J. Willig Truck Transportation Co.,* 40 Cal.2d 669, 678–79, 255 P.2d 802, 808–09 (1953). Consequently, we are in agreement with the apparent acceptance of relevancy by the trial judge.

The record shows that the district court's concern with the form of the hypothetical question went to the issue of proximate cause, and it is in this connection that error occurred. Once the plaintiff had produced evidence that the call to the police took place at 10:27 and could properly hypothesize that the accident occurred at 9:45, a time gap of 42 minutes was established. It is true that the person who called at 10:27 may not have been the one the eyewitness asked to call the police. But the caller's identity is not material. What is crucial is that if the defendant had stopped at the scene, he could have called immediately.

Under the circumstances here, the defendant had the opportunity and, indeed, a duty to notify the police or medical authorities within the shortest possible time. He did not do so, and because of that failure the authorities were not contacted until 10:27, a delay chargeable to the defendant.

Only after 10:27 would the defendant's continuing failure to summon aid cease to be a proximate cause and under the proofs submitted, it was only then that Reilly was "cut out of the picture."

The defendants' objection, founded upon the premise that a call was made immediately after the accident, was unsound. It simply pointed to differing inferences from the testimony, the resolution of which was the function of the jury. If it accepted the version which plaintiff properly proffered, then the fact finder could conclude that the defendant's conduct had created a 42-minute delay in getting desperately needed assistance to the decedent.

The fact that there was a prompt response to the call at 10:27—there was a gap of but three minutes between the time the police summoned the ambulance and when it arrived—would allow an inference of an equally expeditious reaction to a call at 9:45 had defendant made one. In any case, the defendant was free to come forward with evidence to the contrary. The issue of an efficient, intervening cause is a jury question under New Jersey law, *Rappaport v. Nichols,* 31 N.J. 188, 203, 156 A.2d 1, 9 (1959), and the plaintiff is under no burden to negative every conceivable such cause. *Cf.* Prosser, *supra* § 41.

As we observed earlier, the admission of expert testimony is generally a matter of discretion with the trial judge, but here we cannot say that the exercise of discretion was based upon a correct legal premise. It was the misapprehension of the proximate cause issue underlying the hypothetical that prevented a proper exercise of discretion. Since legal error infected the ruling, a less stringent standard of review is applicable, *cf. Miley v. Delta Marine Drilling Co.,* 473 F.2d 856, 858 (5th Cir.), *cert. denied,* 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973); *United States v. 60.14 Acres of Land,* 362 F.2d 660, 663 (3d Cir. 1966), and we conclude that it was reversible error to exclude Dr. Befeler's opinion.

This evidentiary ruling cannot be separated from the ultimate result in the case. In the absence of evidence establishing the effect of defendant's post-accident conduct, plaintiff could not show any damages arising out of the failure to render aid and was also barred from claiming punitive damages. Additionally, if the jury had accepted plaintiff's argument that defendant's independent act of negligence in failing to render aid harmed the decedent, then a serious question would arise as to whether there was any comparative negligence of the plaintiff that could be used to offset defendant's conduct.

In these circumstances, the exclusion of the expert's testimony was so crucial that it can be remedied only by a retrial. Accordingly, the judgment of the district court will be vacated and the case will be remanded for a new trial.