

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-8-2002

# Quinn v. Consol Freightways

Precedential or Non-Precedential:

Docket 1-1681

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation
"Quinn v. Consol Freightways" (2002). *2002 Decisions*. Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed March 8, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1681

JOYCE J. QUINN,
        Appellant

v.

CONSOLIDATED FREIGHTWAYS CORPORATION OF
DELAWARE; d/b/a/ CF MOTORFREIGHT;
A. WILLIAM KUDRICK

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 99-cv-01865)
District Judge: Honorable Yvette Kane

Argued December 17, 2001

Before: SLOVITER, McKEE, Circuit Judges, and
HAYDEN,*  District Judge

(Filed: March 8, 2002)

_____
* Hon. Katharine S. Hayden, United States District Judge for the
        District of New Jersey, sitting by designation.

Francine Z. Taylor (ARGUED)
Lancaster, PA 17602-2949

 Attorney for Appellant

Vincent Candiello (ARGUED)
G. Scott Paterno
Morgan, Lewis & Bockius LLP
Harrisburg, PA 17101

 Attorneys for Appellee,
Consolidated Freightways of
Delaware

OPINION OF THE COURT

HAYDEN, District Judge:

After a five day trial on Joyce Quinn's sexual harassment lawsuit against her former employer, Consolidated Freightways Corporation (hereafter "CF"), the jury returned a verdict in favor of defendant in less than an hour. Quinn appeals from evidentiary decisions of the trial court, including a discovery sanction that effectively precluded potentially corroborating testimony of a co-worker. Because we find that these rulings denied plaintiff the opportunity to present critical evidence to the jury, we reverse.

Background

Joyce Quinn, with established credentials in the trucking industry, was hired by CF as an account manager in its York Terminal on May 11, 1992. Quinn claims that in the course of her employment at CF, the predominantly male sales staff and managers, and in particular William Kudrick, a CF executive, sexually harassed and discriminated against her.

Quinn and Kudrick had a sexual relationship in 1990, before Quinn began working for CF. However, Quinn ended it after approximately two months. She claims that Kudrick had exhibited inappropriate behavior toward her as early as 1985. That year, while she was working elsewhere, he charged her on a golf course, tackled her to the ground,

2

and pinned her beneath him in the presence of two clients. Kudrick confirmed this incident when he testified at trial in the instant suit.

Sometime in 1993, after she was hired by CF, Quinn was required to work two days per week at CF's Lancaster terminal, which was under Kudrick's supervision. Quinn alleges that Kudrick repeatedly suggested that they"fool around." Thereafter, in 1995, Kudrick became Quinn's direct supervisor at CF's York terminal. Quinn was the only female sales manager at that facility, and she testified that an ongoing hostile work environment existed there, and that it intensified after Kudrick became her supervisor.

In March, 1996 Quinn was diagnosed with a major depressive disorder which she attributes to workplace conditions. Medication was prescribed for her, and her psychiatrist instructed her to reduce her work schedule which was then 60 hours/week.

During the leave of absence that followed, Quinn filed an initial complaint with the Pennsylvania Human Relations Commission (PHRC). That complaint, as subsequently supplemented, on April 15, 1996, accused CF of sexual discrimination and illegal retaliation for Quinn engaging in protected behavior. Quinn took another leave of absence later in April following a brief return to work. In May, following a heated exchange over Quinn's reduced work schedule, Kudrick fired her. The firing was purportedly for insubordination.

Quinn filed her federal lawsuit in October 1999 against CF and Kudrick, alleging various disability and discrimination claims against CF, including sex discrimination, disability discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), and the Pennsylvania Human Relations Act (PHRA). Additionally, the complaint charged Kudrick with violating the PHRA, intentional infliction of emotional distress, assault, and battery. In November 1999 the defendants filed motions to dismiss. After stipulation of all parties, Quinn amended her complaint by omitting the claims for intentional infliction of emotional distress and assault and battery; and by limiting

3

the individual claims against Kudrick to charges of sexual discrimination. Thereafter, the judge denied the defendants' motions to dismiss, and the case proceeded to discovery.

In July 2000, close to the conclusion of the discovery period, plaintiff deposed a longtime CF employee, Vida Trout Passion, who was working as a sales manager at the Reading Terminal, about one hour's drive from the Lancaster Terminal that plaintiff was assigned to. Passion testified at length about a hostile work environment at the Reading Terminal, and said that she had unsuccessfully complained about it for years. Additionally, in response to questioning by CF's attorney, Passion disclosed that she once witnessed Kudrick sexually accost Quinn in a hotel room that Quinn and Passion were sharing during a sales conference. Quinn was not present at that deposition when Passion offered that testimony. Earlier, in her own deposition, Quinn had described an encounter with Kudrick in a hotel room during which he purportedly made unwanted sexual advances towards her. However, Quinn testified that she had been alone in the room at the time of that incident.

CF's pretrial motions included a motion in limine in which CF asked the trial court to exclude testimony Vida Passion might offer about her own observations at CF's Reading Terminal. These observations allegedly included gender oriented discussions including discussions about "strip club" escapades, and conversations that could arguably establish a hostile work environment under Title VII. CF argued that Passion's observations were not relevant to Quinn's Title VII claim because Passion worked at the Reading facility, and Quinn's allegations pertained to the Lancaster facility. Quinn's counsel attempted to rebut that argument by pointing out that Division Manager Robert Warner, supervised both facilities, and that Passion's observations about the Reading Terminal corroborated Quinn's allegations regarding the environment at the Lancaster Terminal. The District Court agreed with CF and entered an order precluding Passion from testifying about her observations at CF's Reading Terminal.

After discovery closed, CF moved for summary judgment. Quinn filed a brief in opposition to that motion in which

4

she specified in a number of instances of Kudrick's inappropriate and unwanted sexual advances toward her. These included two such occasions in a hotel room, and Quinn noted that Passion had witnessed one of those advances.

The judge nevertheless granted CF's motion for summary judgment as to Quinn's ADA and PHRA claims, and she also dismissed all of the claims against Kudrick. Quinn's Title VII claims against CF for sexual discrimination, hostile environment, and retaliation then proceeded to trial.

On the afternoon of Friday, February 9, 2001, Quinn's attorney faxed CF's attorney a new time line of events that she intended to use as an exhibit during her opening statement. The following Monday, just before the jury was to be called into the courtroom to hear opening statements, and after the attorneys had worked out a date discrepancy on the time line, CF's attorney asked the judge to address an issue concerning exhibits. He argued that particular portions of the new time line exhibit raised new issues, one of which, an incident where Kudrick accosted plaintiff in a hotel room, he described as "a brand new allegation and what we presume will be testimony by plaintiff that has never been raised before regarding a second hotel incident." App. 17. Counsel for Quinn confirmed that her client would be testifying about that incident, and counsel for CF stated that "this is a discovery abuse," App. 18, because Quinn's answers to the interrogatories Kudrick propounded identified only one hotel room incident and Quinn had never amended those answers. Now the time line exhibit reflected two incidents. CF argued that this was a violation of the disclosure required by the discovery rules, and amounted to a "dramatic addition." He asked the court to impose sanctions under Fed. R. Civ. P. 37 and preclude testimony of a second hotel incident. App. 18–19.[1]

In response, Quinn's attorney pointed out that CF had known about Vida Passion's testimony regarding this

_____

1. Notwithstanding, this apparent conflict, there is no indication in the record on appeal that CF attempted, in any of the several in limine applications it made before trial, to exclude either plaintiff's or Passion's testimony about the hotel room incident Passion said she had witnessed.

5

second incident since she was deposed in the presence of CF's counsel in July 2000. App. 26-27. She also alluded to the difficulties she had experienced in obtaining Vida Passion's deposition, and Quinn's concerns about putting Passion in jeopardy since Passion still worked for CF. App. 25. Notwithstanding that explanation, the trial court admonished Quinn's attorney that "you cannot come in on the day of trial and bolster your case with new allegations that haven't been disclosed in discovery," App. 27. The court granted CF's request for sanctions and ordered: "The evidence will be excluded from the time line and from the testimony that will be presented here." App. 29.

In asking the court to reconsider that ruling, Quinn's counsel argued that both sides had learned about Passion's corroborating testimony regarding Kudrick's conduct at the same time, back in July 2000 when Passion was deposed in the presence of CF's attorney. App. 32-33. However, the trial court was not dissuaded from its belief that CF's objection was appropriate, and that Quinn was improperly attempting to change her testimony on the eve of trial, and therefore the court refused to reconsider its prior ruling. App. 34-35.

Accordingly, when Passion testified at trial, she was not examined about the hotel incident in which she allegedly saw Kudrick accost Quinn. Similarly, because the court had granted CF's motion in limine, Passion was not asked about the allegedly hostile work environment at CF's Reading facility. CF defended against Quinn's allegations of discrimination and retaliation by offering testimony that she had actually been discharged for misconduct and insubordination. The jury did not accept Quinn's claim that this explanation was pretextual, and returned a verdict for CF and against Quinn. This appeal followed.

Standard of Review and Jurisdiction

The trial court had jurisdiction under Title VII of the Civil Rights Act of 1964. See 42 U.S.C. S 2000e-2(a)(1). We have jurisdiction pursuant to 28 U.S.C. S 1291. We review the trial court's decisions regarding the discovery sanction and the admissibility of evidence for abuse of discretion. See Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir.

6

1995); Glass v. Philadelphia Elec. Co., 34 F. 3d 188 (3d Cir. 1994); Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir. 1977), reversed on other grounds.

Discussion

Trial judges are afforded wide discretion in making rulings on the admissibility of evidence. See Hurley v. Atlantic City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999); Fuentes v. Reilly, 590 F.2d 509, 511 (3d Cir. 1979). We review admissibility determinations, and exclusion of evidence for an abuse of discretion. "[T]he exclusion of critical evidence is an `extreme' sanction, not normally to be imposed absent a showing of willful deception or`flagrant disregard' of a court order by the proponent of the evidence." Meyers, 559 F.2d at 904. In Konstantopoulos v. Westvaco Corp., 112 F. 3d 712 (3rd Cir. 1977), we relied on the factors in Meyers, 559 F.2d at 904-905, in considering whether a district court had abused its discretion in excluding testimony of an expert witness as a discovery sanction. Along with the importance of the excluded testimony, the Meyers factors include (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with the district court's order.

It is undisputed that Vida Passion was a key witness for plaintiff -- she was a long time employee still working for CF at the time of trial. Passion's testimony about the hotel incident with Kudrick was clearly probative, highly relevant, and it had the potential to provide strong support for plaintiff's case, notwithstanding CF's ability to impeach it with Quinn's own recollection.

Thus, on the eve of trial, plaintiff was denied testimony that could have corroborated her account of an unwelcome sexual "advance" by her supervisor at CF. Counsel for CF negated this crucial testimony not by impeachment, but by claiming that plaintiff's counsel had violated discovery rules. Despite the claim of a last minute surprise that he

7

made to the trial court, during oral argument on this appeal, CF's attorney stated that from the time Vida Passion gave corroborating, damaging, testimony about Kudrick during her deposition, he knew he had potent cross-examination material. Quinn had testified at her deposition to one hotel room incident during which she was alone; now Quinn was offering Passion to testify about a hotel room incident where she, Passion, was present-- conflicting with plaintiff's own version. Shortly after Passion's deposition, discovery closed and plaintiff never supplemented her interrogatory answers so as to add a second hotel room incident.

Quinn's brief in opposition to CF's motion for summary judgment, filed October 25, 2000, did specify that her evidence included two hotel room incidents, one of them witnessed by Passion. CF's attorney indicated at argument that he did not care how many incidents were referenced there: he had plaintiff locked into a description of one highly charged incident that inherently conflicted with Passion's testimony. CF therefore knew of Passion's testimony for months before attempting to strike it as a last minute surprise that justified sanctions as a discovery abuse. Not only is it clear that counsel for CF was not surprised by evidence of this hotel encounter, but he concedes that any prejudice from admitting this testimony was minimal at best because it afforded him an additional avenue to impeach Quinn's own testimony.

When we apply the Meyers factors to this record, it is clear that CF had known about Passion's description of the hotel incident for over seven months; any prejudice was neutralized because CF's trial counsel was confident he could cross-examine Quinn based upon Passion's testimony; there was no suggestion that the trial would be interrupted; and although the trial court scolded Quinn's attorney when she offered reasons for Quinn's not having supplemented her original deposition testimony, there was no specific finding of bad faith or wilfulness. The overtly malign motive CF's attorney ascribed to plaintiff-- that she was conforming her testimony to Passion's and deliberately fabricating a second incident -- was never tested by the trial judge. See Federal Rule of Civil Procedure 37(c)(1);

8

Nicholas v. Pennsylvania State University, 227 F.3d 133 (3d Cir. 2000). Most striking, there is not a shred of evidence that CF was surprised or that it would have been prejudiced by the admission of Quinn's or Passion's testimony on the second hotel room incident, testimony counsel was fully prepared to exploit on cross-examination. To exclude critical evidence for failing to amend interrogatory answers under these circumstances champions form over substance and denied Quinn her full day in court. See Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 53 (3d Cir. 1989) (It is "highly probable that the evidentiary rulings affected the outcome of the case.").2

The trial court's blanket exclusion of Passion's testimony regarding a hotel incident involving Kudrick and Quinn is not supported by this record. Plaintiffs face proof problems in employment discrimination cases. See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983) (acknowledging that "[a]ll courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult . . . [and that] [t]here will seldom be eyewitness testimony as to the employer's mental processes" which the plaintiff can use to show discriminatory conduct); Josey v. John H. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993) (acknowledging that there is seldom direct "smoking gun" evidence of discrimination). This has prompted a "judicial inhospitability to blanket evidentiary exclusions in discrimination cases," in this and other circuits. Glass v. Philadelphia Elec. Co., 34 F.3d at 195. In Glass, we cited to an Eighth Circuit decision, Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988), where that court noted that "the effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of his

_____

2. Regarding Quinn's other points on appeal, we do not find the trial court abused its discretion when it excluded evidence that CF, through Kudrick, decided not to contest Quinn's application for unemployment benefits, although the ruling may be revisited in light of the proofs that will be presented as a result of our decision. Finally, our decision makes it unnecessary to address the denial of Quinn's motion for a new trial.

9

own motives." Estes, 856 F.2d at 1103. Our decision in Glass took note of a subsequent Eighth Circuit case where the court reversed a ruling in a disparate treatment sex discrimination case that barred the plaintiff from introducing evidence of prior sexual harassment of herself and other employees of the defendant. Hawkins v. Hennepin Technical Center, 900 F.2d 153 (8th Cir. 1990), pointed out that "an atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases." 900 F.2d at 156. Following this reasoning, in Glass we concluded that the district court abused its discretion when it barred Glass from eliciting testimony about how the hostile work environment of his employment bore on his job performance, 34 F. 3d at 195, and we reversed and remanded for a new trial.

Moreover, even absent our concern with blanket evidentiary exclusions, we remain troubled by the trial judge granting the sanctions CF requested here on the morning of trial -- made without advance warning to plaintiff's attorney.3 Although she did testify for plaintiff, Passion's testimony was significantly limited in scope because of the trial court's rulings. Given the importance of that testimony, and CF's advance knowledge of it, we conclude that the trial court's order precluding Passion's testimony about a hotel incident was an abuse of discretion. For similar reasons, we must also conclude that the district court abused its discretion by precluding testimony of Passion's observations about the environment at CR's Reading Terminal.

The exclusion of Passion's testimony about the sexually charged work environment at CF's Reading Terminal was a blanket exclusion that denied Quinn an opportunity to present evidence about the atmosphere maintained by CF at a work site where Passion -- like Quinn at the York Terminal -- was the only female account manager. Moreover, the very same individual, Division Manager

_____

3. Counsel informed us at argument that the time line exhibit was never introduced at trial. It reflected, according to Quinn's attorney, events supporting her disparate treatment claims.

Robert Warner, supervised both facilities. According to Passion's deposition testimony, her peers and supervisor at Reading referred to her in derogatory, gender-based terms and when she complained she was told that it was"just part of the job." App. 248. Indeed, that is exactly what Quinn's suit alleges; that this environment was"part of the job." It is also exactly what Title VII prohibits. Passion claimed pornographic pictures were openly displayed at the Reading Terminal and that the male employees hung postcards and "trophies" they brought back from a local hangout, Al's Cabaret, which featured "girlie" shows. Although Quinn never worked at the Reading Terminal, like Passion -- she had reported offensive conduct at the York Terminal to Division Manager Robert Warner. Passion's testimony about the workplace environment could establish an atmosphere of "condoned sexual harassment in a workplace [that] increases the likelihood of retaliation for complaints in individual cases," Hawkins, 900 F. 2d at 156, and amounted to critical evidence from which the jury could find that CF's proffered reason for plaintiff's termination was pretextual.

Accordingly, for all of the reasons set forth above, the judgment entered by the trial court will be reversed and the matter remanded for a new trial.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

11