**UNITED STATES of America,**

v.

**Raphael FARRINGTON, Appellant.**

**No. 00–3358.**

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 2002.

Decided Feb. 4, 2003.

Stephen A. Brusch (argued), Brusch Law Firm, St. Thomas, USVI, for Appellant.

Kim L. Chisholm (argued), Assistant U.S. Attorney, Federal Building & U.S. Courthouse, St. Thomas, USVI, for Appellee.

Before SCIRICA, ALITO, and RENDELL, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

Appellant Raphael Farrington was convicted of bank fraud and money laundering. On appeal he contends that the District Court misapplied the money-laundering statute, improperly refused to sever Farrington's trial from that of a co-defendant, issued faulty jury instructions, and erroneously excluded evidence. He also claims ineffective assistance of counsel. We have considered each argument and see no basis for disturbing Farrington's convictions.

### I.

Farrington co-owned Cartech, a Virgin Islands used-car dealership that frequently transported purchased automobiles from the mainland for customers. Elvis David, the owner of a towing company, approached Terrance Grosvenor, a loan official at Citibank, purportedly seeking a loan for the purchase of a $21,000 tow truck. Grosvenor referred David to Farrington. Farrington prepared a Cartech invoice representing the purchase price of the truck as $45,000, with $17,000 paid. Grosvenor altered the invoice to reflect $25,000 paid upon determining that Citibank would only approve a $20,000 loan. Grosvenor thereafter informed David that the bank had approved a $17,000 loan and told David to see Farrington to receive the funds. Farrington wrote a Chase check to David for $17,000 and received from Grosvenor a Citibank check in the amount of $20,000 endorsed to Cartech. Farrington deposited the $20,000 check in Cartech's account. The Citibank check was dated February 7, 1997, was deposited by Farrington on February 10, 1997, and was credited to Cartech's account on February 10, 1997. The Chase check was dated February 10, 1997, and was debited from Cartech's account on February 11, 1997. Farrington alleges that when he wrote the Chase check the funds from the Citibank check were not yet available for withdrawal. The scheme was exposed when Citibank sought to repossess the truck and discovered that David had never purchased it. All three men were charged.

On August 27, 1998, Farrington moved to sever his case from David's and Grosvenor's. The court granted the motion. David eventually plea-bargained and cooperated with the government. After Grosvenor's trial ended in a mistrial, the court rejoined his trial with Farrington's despite another motion to sever. At the joint trial the court denied Farrington's motion to introduce evidence that Grosvenor committed instances of bank fraud other than the one incident charged. The court also declined to issue a jury instruction requested by Farrington stating that

to convict for money laundering, the jury must find that Farrington knew the check he wrote to David would be paid by funds from the Citibank check. Farrington was convicted of bank fraud and money laundering, in violation of 18 U.S.C. §§ 1344 and 1957, on August 19, 1999. Farrington filed a post-judgment motion for acquittal on the money-laundering charge pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion and sentenced him to four months' jail time, four months' home detention, three years' of probation, $3,000 in restitution, and $200 in fines.

## III.

Farrington claims that the District Court erred in four different respects and that his trial lawyer provided ineffective assistance. We address each argument in turn.

## A.

Our review of a District Court's disposition of a Rule 29 motion is plenary to the extent that the appellant raises issues of statutory interpretation, as Farrington does here *See United States v. Thayer*, 201 F.3d 214, 218 19 (3d Cir.1999). We nevertheless view the evidence "in the light most favorable to the prosecution" and "draw all reasonable inferences in favor of the jury's verdict." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir.2002).

■ Farrington argues that the District Court erred in denying his motion for a judgment of acquittal because the government failed to prove the elements of money laundering as provided in 18 U.S.C. § 1957. The statute prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified un-

lawful activity." 18 U.S.C. §1957(a). "[C]riminally derived property" is defined as "property constituting, or derived from, proceeds obtained from a criminal offense." Id. §1957(f)(2). As Farrington observes, this provision is substantially broader than 18 U.S.C. § 1956, in that it aims to criminalize the mere knowing possession of tainted funds and does not require, for example, the intent to continue a criminal enterprise or to conceal the source of the funds. *Compare* 18 U.S.C. § 1957 *with* 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i). To convict a defendant of violating section 1957, the prosecution must prove that "(1) the defendant engage[d] or attempt[ed] to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from specified unlawful activity." *United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir.1996) (quoting *United States v. Johnson*, 971 F.2d 562, 567 n. 3 (10th Cir.1992)).

Farrington first contends that "[u]nder 1957, the government mu[s]t prove that Mr. Farrington knew that his legitimate Cartech check no. 1136 [$17,000 to David] would be paid with tainted funds *at the moment he wrote it*." He claims that because the funds from the tainted $20,000 check from Citibank to Cartech were not yet available for withdrawal in the account, the source of the $17,000 was necessarily legitimate money and therefore cannot serve as the basis for a violation of section 1957. Farrington argues that the government was required to prove that he "knew that the tainted Citibank check had been credited to Cartech's account at the time he wr[o]te check no. 1136" and that he "knew that there w[ere] not enough legitimate funds in Cartech's account to cover check no. 1136." Farrington also argues that section 1957 requires that the defen-

dant already have obtained the tainted money, and that one does not "obtain" tainted money until it is credited to his account.

In *Sokolow*, this Court held that section 1957 does not require the government to "trace the funds constituting criminal proceeds when they are commingled with funds obtained from legitimate sources." 91 F.3d at 409; *cf. United States v. Moore*, 27 F.3d 969, 976 77 (4th Cir.1994) ("Money is fungible, and when funds obtained from unlawful activity have been combined with funds from lawful activity into a single asset, the illicitly acquired funds and the legitimately acquired funds ... cannot be distinguished from each other...."). Whether the account also contained $17,000 from legitimate sources that could cover the check written to David is therefore immaterial. Any debits from the account are presumed to be tainted up to the amount of $20,000, the value of the tainted funds credited. *See Moore*, 27 F.3d at 977. Farrington's argument that the government was required to show that he knew that there were not enough legitimate funds to cover the check is therefore unavailing.

■ Farrington next argues that the government was required to show that the tainted Citibank check had been credited to Cartech's account at the time he wrote the Chase check. This argument supposes that a "monetary transaction" within the ambit of section 1957 necessarily ends once the check changes hands. This finds support in the statutory language, which defines "monetary transaction" in part as the exchange of a monetary instrument. *See* 18 U.S.C. § 1957(f)(1). If, as Farrington alleges, the commingling did not take place until after the monetary transaction, i.e., until after the exchange, then it may be inaccurate to describe the funds as "proceeds obtained from a criminal offense," 18

U.S.C. § 1957(f)(2), because the proceeds had not yet been obtained. *See Johnson*, 971 F.2d at 568 (reviewing dictionary definitions of "obtain" and concluding that "a violation of § 1957 [can] occur[ ] only after the individual involved in the specified criminal activity gained possession ... of the proceeds generated by the criminal activity").

Because the Court must "draw all reasonable inferences in favor of the jury's verdict," *Smith*, 294 F.3d at 476, however, we must infer that the account was commingled from the fact that the Chase account was credited with tainted funds on the same day that Farrington wrote the $17,000 Chase check. Even if Farrington's interpretation of section 1957 is accurate, an issue which we do not address, the high standard of review compels a holding that the government met its burden.

### B.

■ Farrington argues that the District Court was without authority to reconsolidate his trial with Grosvenor's sua sponte. He claims the reconsolidation prejudiced him because (1) the admissibility of Grosvenor's testimony compelled him to testify in his own defense, and (2) evidence admissible at the joint trial would not have been admissible were he tried alone. The District Court's denial of the motion for severance may be overturned only if Farrington "demonstrate[s] clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Thornton*, 1 F.3d 149, 153 (3d Cir.1993).

Farrington correctly argues that the mere fact that the government did not actually introduce Grosvenor's testimony implicating him does not bear on whether the possibility that the government could introduce this testimony caused prejudice. *See United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir.1991) (holding that the

determination of prejudice is made on the basis of what trial developments were reasonably foreseeable at the outset). But Farrington is incorrect to conclude that his consequent decision to testify in his own defense constitutes prejudice or a violation of the Fifth Amendment. Farrington was not "compelled" to testify but made a strategic decision, reasoning that if Grosvenor's testimony was introduced, he wanted to contradict it on the record. He could as easily have pursued the alternative approach of preparing to discredit Grosvenor's testimony with other evidence or attacks on Grosvenor's credibility during closing argument. Indeed, Farrington concedes that the jurors in the first trial disbelieved Grosvenor's testimony, and he could have chosen to count on the same impression obtaining in the retrial. If the jury is able to "compartmentalize the allegedly prejudicial evidence," no prejudice exists. *Id.* Consequently, the District Court's reconsolidation withstands appellate scrutiny.

### C.

■ Farrington argues that the government was required to prove that he knew his conduct was unlawful and that he acted willfully and that the District Court erroneously failed to instruct the jury as such. We review jury instructions not objected to at trial for plain error. *See United States v. Wolfe,* 245 F.3d 257, 260–61 (3d Cir.2001). With respect to section 1957, Farrington's argument is foreclosed by *Sokolow,* which held that section 1957 does not contain a willfulness requirement and does "not require proof of knowledge of illegality." 91 F.3d at 408. " '[T]he statutory requirement that the underlying acts be performed "knowingly" requires only that the act be voluntary and intentional and not that a person knows that he is breaking the law.' " *Id.* (quoting *United States v. Zehrbach,* 47 F.3d 1252, 1261 (3d

Cir.1995)). The District Court was only required to instruct on willfulness on the aiding and abetting charge, and it did so, instructing jurors that:

> the defendant may [not] be found guilty as an aider and abettor to the crime ... unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing bystander or spectator. In other words, you may not find the defendant guilty unless you find beyond a reasonable doubt that [he] willfully participated in its commission.

Willfulness has no further applicability beyond the specific purpose for which the court provided the instruction.

### D.

■ Farrington contends that the District Court committed reversible error by declining to admit "reverse 404(b)" evidence that he attempted to offer against Grosvenor. Rule 404(b) of the Federal Rules of Evidence provides, "Evidence of other crimes, wrongs, or acts ... may ... be admissible for ... purposes[ ] such as proof of motive, opportunity intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b). Farrington sought to introduce evidence that Grosvenor had committed similar frauds at Citibank to support a defense that David and Grosvenor operated without Farrington's help. (When a defendant offers exculpatory evidence under Rule 404(b), it is characterized as "reverse 404(b)" evidence because the provision is more typically used by prosecutors to implicate a defendant.) We review the District Court's exclusion of reverse 404(b) evidence for abuse of discretion. *See Quinn v. Consol. Freightways Corp. of Delaware,* 283 F.3d 572, 576 (3d Cir.2002); *see also GE v. Joiner,* 522

U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

The government counters that (1) Farrington never actually attempted to introduce the reverse 404(b) evidence, and (2) the District Court would nevertheless have been entitled to exclude it because it lacked probative value. If the former contention is true, the latter point is certainly superfluous. The government claims the court conducted a hearing in limine on the reverse 404(b) evidence and put off ruling on admissibility until the evidence was introduced at trial, and Farrington simply neglected to attempt to introduce it. Later on in the hearing, however, the court ruled, "I'm not going to allow Counsel to argue in opening statement or bring in evidence ... relating to other supposed bad acts of Mr. Grosvenor that he whited out contracts, changed documents, and for other loan transactions, because it's not relevant." The court reasoned that "[i]t would require the Court to get into all kinds of little, mini trials. We would have to then explain how that was the same thing." Having received this unfavorable ruling Farrington need not have revisited the issue by attempting to admit evidence the court had already ruled was excluded, so the government's first counterpoint lacks merit.

The District Court therefore held that introducing the reverse 404(b) evidence implicated the considerations of Rules 401 to 403. Rule 402 provides, "Evidence which is not relevant is inadmissible," and Rule 401 defines relevant evidence as "all evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401–402. Rule 403 permits the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time." FED. R.EVID. 403. The court's concern about "all kinds of little, mini trials" implicates Rule 403, and the court's belief that Farrington could not prove that the reverse 404(b) frauds were "the same thing" as the crime charged (and therefore indicative of a common plan) speaks to the relevance of the proposed evidence as well as its compatibility with Rule 404(b).

Deference to the trial court is the "hallmark" of abuse-of-discretion review of decisions bearing on the admissibility of evidence. *Joiner,* 522 U.S. at 143. Given that standard of review, the trial court's determination that the evidence lacked relevance and would tend to yield confusion and waste time did not constitute an abuse of discretion. Evidence that Grosvenor committed other frauds without Farrington's help does not render it less likely that he received Farrington's cooperation here. Moreover, since the general method of the other frauds differs somewhat from the fraud alleged in this case, it fails to satisfy the common-plan requirement of Rule 404(b). Finally, evidence of other frauds executed differently could needlessly confuse the jury's understanding of the crimes with which Farrington was charged. All of these determinations are reasonable, so we cannot hold that the District Court abused its discretion.

### E.

Farrington argues that his trial lawyer provided ineffective assistance of counsel by failing to comply with the disclosure requirements regarding expert-witness testimony. Rule 16 of the Federal Rules of Criminal Procedure requires the proponent of an expert witness to provide an advance summary of the witness's intended testimony. Farrington's counsel

neglected to do so, and although the court gave counsel a second chance to comply, she did not raise the issue again. We may find that Farrington's trial counsel provided ineffective assistance only upon a showing of prejudice and "a reasonable probability that, but for counsel's unprofessional errors," Farrington would have prevailed. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The government argues that because the court ruled the testimony irrelevant without regard to Rule 16, no prejudice was manifest.

The proposed expert was another automobile dealer who would have testified that Farrington's preparation of the allegedly fraudulent invoice was standard practice among car dealers in the Virgin Islands. After the Rule 16 irregularities precluded his testimony as an expert, Farrington's counsel sought to introduce his testimony as a lay witness. The court ruled: "That's irrelevant to this issue [of whether Farrington's invoice misrepresented information to the bank], so I will not allow him to testify." The court's determination of irrelevancy would have been the same had the testimony been offered by an expert. Rule 402's relevancy requirement applies no differently to expert testimony than to lay witnesses. *See Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir.1985). The court's ruling on relevancy did not constitute an abuse of discretion. Because the trial would have proceeded similarly even if counsel had followed Rule 16, failure to submit the witness as an expert does not amount to ineffective assistance.

## IV.

Because we find no error warranting reversal and no basis for an ineffective-assistance-of-counsel claim, we affirm Farrington's convictions.