**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1048
_____

DEBORA A. SCHMIDT,
                                        Appellant

v.

MARS, INC.

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 3-09-cv-03008)
District Judge:  Honorable Peter G. Sheridan

Submitted under Third Circuit LAR 34.1(a)
on April 10, 2014

Before:  AMBRO, JORDAN and ROTH, Circuit Judges

(Filed: October 7, 2014)

O P I N I O N

**ROTH**, Circuit Judge:

        Debora A. Schmidt, a former federal tax analyst employed by Mars, Inc., filed this

lawsuit in 2009 in New Jersey Superior Court, alleging that Mars had terminated her

employment because of sex discrimination and in retaliation for Schmidt's complaints about sex discrimination in violation of the New Jersey Law Against Discrimination.[1] Mars removed the action to the U.S. District Court for the District of New Jersey, and the parties submitted these claims to a trial by jury. After a nine-day trial, the jury found for Mars and the District Court entered judgment in Mars's favor. Shortly thereafter, Schmidt made a post-verdict motion for a new trial pursuant to Federal Rule of Civil Procedure 59, asserting several arguments that she had previously made in pretrial motions as well as throughout trial.[2] The District Court denied Schmidt's motion on December 5, 2012. Schmidt appealed. We will affirm.

## I.     Background

Schmidt was hired by Mars in 1997. For the first two years of her employment, Schmidt reported to Wayne Monfries, who at that time was the federal tax manager for Mars. In 1999, Monfries moved to Europe as Mars's European Tax Manager, a role he held until 2004, when he returned to the United States to be the Americas Tax Manager for Mars. Except for the time Monfries was in Europe, and a brief period of 2006 when he was on disability leave, Schmidt reported to Monfries. While Monfries was working in Europe, Schmidt reported to Ira Siegel or Steven Altamore.

---

[1] Schmidt's complaint also included a claim of disability discrimination, but Schmidt abandoned the claim in response to Mars's motion for summary judgment.

[2] Schmidt also brought a post-trial motion for judgment as a matter of law, ostensibly pursuant to Rule 50. The District Court properly denied this motion, however, because Schmidt failed to move for judgment as a matter of law "before the case [was] submitted to the jury" and therefore there was no motion to "renew[]" after the entry of judgment on the jury's verdict. Fed. R. Civ. P. 50(b); *see also Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 545–46 (3d Cir. 2010).

2

Schmidt received a performance review each year she worked at Mars, which was prepared by her supervisor. For her first seven years of employment, Schmidt received a performance rating of "Good" or its equivalent. In her 2005 review, however, Monfries rated Schmidt's performance as "Below Expectations." Schmidt responded to this rating by submitting a fifteen-page document attempting to refute each factual assertion Monfries had made in the review. In early August 2006, Schmidt met with Monfries to conduct a mid-year evaluation. In that meeting, Monfries informed Schmidt that her performance was continuing to fall below his expectations. On August 20, 2006, Schmidt submitted a written complaint to Mars's human resources personnel alleging the Monfries was engaging in harassment. More than two weeks later, Schmidt supplemented this complaint by asserting that Monfries was discriminating against her based on her sex.

Schmidt provided Mars's human resources personnel with a detailed description of her allegations of sex discrimination in an eight-page memorandum. In this memorandum, she asserted that she felt she was being "held to higher standards" than her male co-worker, Mark Dunckle, who was the State Tax Manager for Mars. Mars investigated these claims, but took no action in response to Schmidt's allegations.

Because Schmidt's performance had not improved, on August 31, 2006, Mars put Schmidt on a performance improvement plan. In May 2007, Mars terminated Schmidt's employment, citing declining performance.

Schmidt's claims were presented to a jury during a nine-day trial in May 2013. In defense, Mars submitted evidence to support its assertion that Schmidt was terminated for

3

performance reasons, and not because of her sex. In addition, Mars submitted evidence that Dunckle's position as State Tax Manager was not comparable to Schmidt's position as a Federal Tax Manager. The jury found for Mars. Schmidt appeals.

## II. Standard of Review

As a general matter, we review a District Court's order on a motion for a new trial for abuse of discretion. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 383–84 (3d Cir. 2002). Similarly, we review a District Court's rulings on motions to change venue, discovery orders, efforts to control the conduct of trial, and evidentiary rulings for abuse of discretion. *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (evidentiary rulings); *Washington v. Hovensa LLC*, 652 F.3d 340, 348 n.6 (3d Cir. 2011) (discovery matters); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609–10 (3d Cir. 1995) (conduct of trial); *see Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (motions to transfer). The District Court's interpretation of the Federal Rules of Evidence, however, is subject to plenary review. *Lower Merion Sch. Dist.*, 665 F.3d at 542.

Moreover, because this is a post-judgment appeal, Schmidt must do more than simply show that the District Court committed some error. Rather, Schmidt must also show that any error committed by the District Court affected her substantial rights, *i.e.*, that the District Court's error was not harmless. *Morgan v. Covington Twp.*, 648 F.3d 172, 180 (3d Cir. 2011).

## III. Discussion

### A. Motion to Change Venue

4

The District Court did not abuse its discretion in denying Schmidt's motion to change venue. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although Schmidt now argues to the contrary, Trenton was a proper venue for this case. *See* 28 U.S.C. § 1391(c). Schmidt contends that this case should have been tried in Newark, because traveling to Trenton each day added an hour of commuting time in each direction. While this was no doubt an inconvenience, Schmidt does not identify any negative effect, such as the unavailability of witnesses, that this extra commuting time had on the presentation of her case. *See, e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). We conclude that the District Court acted within its discretion in denying Schmidt's motion.

### B.      Discovery Issues

We also conclude that the District Court did not abuse its discretion in denying Schmidt's pretrial motion to compel discovery. In order to succeed on this aspect of her appeal, Schmidt must show "that the district court's denial of discovery made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1032 (3d Cir. 1997) (internal quotation marks omitted). The District Court acted within its discretion in denying Schmidt's motion because it was filed after the close of discovery. In addition, we defer to district courts on "matters of docket control and conduct of discovery." *See In re Fine Paper Antitrust*

5

*Litig.*, 685 F.2d 810, 818 (3d Cir. 1982). Nothing prevented Schmidt from making a timely motion to compel. Therefore, she has failed to show that more diligent discovery was impossible.

We will also affirm the District Court's ruling not to deem admitted certain requests for admissions propounded upon Mars by Schmidt. We see no reason to disturb the District Court's conclusion that the format and content of the requests violated local rules and that they were improperly served.

### C.     Evidentiary Rulings

Schmidt argues that the District Court committed reversible error by excluding most evidence that related to events occurring prior to 2004. Schmidt's claims were based on her termination from Mars, which she asserted was based on sex discrimination and in retaliation for complaints she had made about treatment she received from her manager, Monfries. Despite Schmidt's assertions to the contrary, the District Court permitted Schmidt's counsel to question Monfries about the full period of his relationship with Schmidt. This included questioning about events that occurred between 1997 and 1999, as well as after 2004. Evidence regarding events that occurred between 1999 and 2004 could not have been relevant to Schmidt's claims, however, because Monfries was not her manager at that time.

Moreover, the District Court permitted Schmidt to challenge the non-discriminatory reason Mars relied upon to terminate Schmidt's employment. Mars argued that Schmidt's employment was terminated and cited her negative performance review in support of this position. The District Court not only permitted Schmidt to

present evidence challenging the assertions made in that performance review, it also permitted Schmidt to present evidence regarding her other performance reviews without date restriction. Given the tangential relevance of the additional evidence Schmidt sought to admit, it was not an abuse of discretion for the District Court to exclude it.

### D. Exclusion of Undisclosed Witnesses and Exhibits

Next, Schmidt argues that she is entitled to a new trial because the District Court excluded testimony from fifteen witnesses Schmidt identified in the Pretrial Order shortly before trial, but had failed to disclose during pretrial discovery. Schmidt does not contest that she did not identify these witnesses as part of her initial disclosures or in response to an interrogatory requesting the identity of each person she intended to call as a witness at trial. Rather, she argues that the witnesses could not be unknown to Mars because they were either identified in Mars's interrogatory answers or documents, mentioned in Schmidt's deposition testimony, or were employees of Mars.

A party is required to disclose the names of witnesses that may be called to testify at trial. *See* Fed. R. Civ. P. 26. Failure to do so will preclude the party's use of those witnesses, unless such failure was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *see also Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Upon reviewing the record, we conclude that the District Court did not abuse its discretion in excluding the witnesses. Schmidt did not properly disclose these witnesses or otherwise indicate that she might call them to testify at trial until after the discovery period had closed and shortly before the beginning of trial, which substantially prejudiced Mars's ability to cross-examine those witnesses. Furthermore, the topics on which

7

Schmidt sought to have these witnesses testify were not so critical that they raise the possibility that the jury's verdict would have been different had Schmidt been allowed to call them. *See Quinn v. Consolidated Freightways Corp. of Del.*, 283 F.3d 572, 577–78 (3d Cir. 2002).

For similar reasons, the District Court did not abuse its discretion in ruling that Schmidt could not use at trial documents she had failed to produce in discovery. Schmidt does not contest that she failed to produce or identify the documents she later sought to admit at trial. Further, the asserted prejudice Schmidt claims to have suffered from the District Court's ruling on appeal is unpersuasive because she was able to introduce several of the topics through witness testimony and cross-examination.

### E.     District Court Control Over Presentation of Evidence

Finally, Schmidt is not entitled to a new trial because of the time limitations the District Court placed on the trial, and its refusal to permit Schmidt to call rebuttal witnesses. District courts "have discretion to impose limits on a party's trial presentation," including by placing time limits on a party's case. *Duquesne Light Co.*, 66 F.3d at 608–11. Upon review of the record, we see no abuse in discretion in the District Court's efforts to streamline the presentation of evidence.[3]

### IV.     Conclusion

---

[3] There is also no merit to Schmidt's argument that she is entitled to a new trial because the District Court ordered that an exhibit regarding another female employee's complaint be redacted to exclude hearsay. The alleged declarant of the statement at issue testified at trial, but Schmidt's counsel declined to question her on this issue. Even assuming error—which we do not—Schmidt has not met the burden of establishing that the trial would have had a different outcome.

8

For the foregoing reasons, the District Court did not commit reversible error in this case.  We will therefore affirm.